**Khalid F. AHMED, et al., Plaintiffs,**

v.

**Barry H. TRUPIN, et al., Defendants.**

**No. 89 Civ. 7645 (RWS).**

United States District Court,
S.D. New York.

Jan. 9, 1992.

---

O'Donnell, Fox & Gartner, P.C., New York City, for plaintiffs; William G. O'Donnell, Stuart F. Gartner, of counsel.

McDonough Marcus Cohn & Tretter, P.C., New York City, for defendant Stuart Becker & Co.; Diane K. Kanca, of counsel.

Eisenberg Honig Fogler & Davis, New York City, for defendant Eisenberg Honig & Fogler; Steven C. Bagwin, of counsel.

## OPINION

SWEET, District Judge.

Defendant Stuart Becker & Co., P.C. ("Stuart Becker"), has moved pursuant to Rules 12(b) and 9(b) of the Federal Rules of Civil Procedure for dismissal of the claims against it, and defendant Eisenberg Honig & Fogler ("Eisenberg Honig") seeks similar relief pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and 56. For the reasons set forth below, their motions are granted, and the claims against them dismissed.

### The Parties

The underlying disputes and principal parties that are the subject of this and related actions are recounted in the prior opinions of this Court, familiarity with which is presumed.[1] In this particular

---

1. *See, e.g., Morin v. Trupin,* 778 F.Supp. 711 (S.D.N.Y.1991); *Morin v. Trupin,* 747 F.Supp. 1051 (S.D.N.Y.1990); *Morin v. Trupin,* 738 F.Supp. 98 (S.D.N.Y.1990).

case, there are 136 plaintiffs. One, the Sarasota Plaza Defense Fund, Inc., is a not-for-profit corporation organized under the laws of Florida with its principal place of business in Florida. The rest, all individuals, are residents of Arizona, California, Connecticut, Delaware, Florida, Illinois, Indiana, Maryland, Michigan, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Texas, Virginia and Wisconsin, and are investors in the limited partnerships that are the subject of these actions.

The defendants in general are alleged to have induced the Plaintiffs into investing in limited partnerships formed for the purpose of owning and operating commercial office space properties by misrepresenting the soundness of the investment properties in partnership offering materials, and, thereafter, to have looted and misappropriated limited partnership funds by exercising control over the general partners and managing agents of the limited partnerships.

. Stuart Becker is a New York corporation. It is a professional accounting firm and was retained to provide financial forecasts for and to conduct audits of one of the limited partnerships, Sarasota Plaza Associates.

Eisenberg Honig is a New York professional corporation with its principal offices in New York City. It was retained by RRI Realty Corp. to prepare the Sarasota Plaza Associates private placement memorandum, a tax opinion, and an opinion on the legality of the limited partnership units.

*Prior Proceedings and Facts*

The Ahmed complaint was filed on November 16, 1989. An amended complaint, which is the subject of these motions, was filed on April 4, 1991. The amended complaint generally alleges violations of § 10(b) of the Securities Exchange Act of 1934 ("'34 Act"), 15 U.S.C. § 78j(b), Rule 10b–5 promulgated under the '34 Act, 17 C.F.R. § 240.10b–5, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1966, and state law claims of civil theft, fraud, breach of fiduciary duty and professional negligence. Against Eisenberg Honig and

Stuart Becker, it specifically alleges federal claims under § 10(b) of the '34 Act and state claims of civil theft and professional negligence.

Stuart Becker filed its motion to dismiss on May 14, 1991, while Eisenberg Honig filed its motion on September 3, 1991. Oral argument was heard on October 17, 1991, and both motions were considered submitted as of that date.

*Discussion*

In general, a court should dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir. 1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

Both defendants argue that the Plaintiffs' § 10(b)/Rule 10b–5 claims are time-barred under the Supreme Court's recent decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and that these claims also fail to meet Rule 9(b)'s particularity requirement, Fed. R.Civ.P. 9(b). If the securities claims are dismissed, both then ask that the Plaintiffs' pendent state claims be dismissed for lack of subject matter jurisdiction.

**I. The Statute of Limitations**

In *Lampf,* the Supreme Court held that private actions under § 10(b) must be commenced within one year after the discovery of the facts constituting the violation and

within three years after such violation. —— U.S. at ——, 111 S.Ct. at 2781–82. In adopting this uniform federal statute of limitations, the Supreme Court borrowed from § 9(e) of the '34 Act, 15 U.S.C. § 78i(e), which provides:

No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation.

The present action was filed before *Lampf* was decided. Therefore, whether *Lampf* is to be applied retroactively must be determined first.

### A. *Retroactivity of Lampf*

■ The Supreme Court had more or less foreclosed the *Lampf* retroactivity question in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (*"Jim Beam"*); *see Welch v. Cadre Capital,* 946 F.2d 185, 187 (2d Cir.1991) (*"Welch II"*). There, in expressing a preference for "principles of equality and *stare decisis* ... over any claim based on a *Chevron Oil* analysis" and rejecting "selective prospectivity," *Jim Beam,* —— U.S. at ——, 111 S.Ct. at 2446 (plurality opinion), the Court essentially held that "when the Court has applied a rule of law to litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.* at ——, 111 S.Ct. at 2448.

Congress, however, recently unsettled this mandate by unwinding the retroactive effect of a uniform federal statute of limitations for § 10(b)/Rule 10b–5 claims to June 19, 1991. It did this by amending the '34 Act and inserting a new § 27A:

(a) EFFECT ON PENDING CAUSES OF ACTION.—The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(b) EFFECT ON DISMISSED CAUSES OF ACTION.—Any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991—

(1) which was dismissed as time barred subsequent to June 19, 1991, and

(2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,

shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section.

Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, § 476, 105 Stat. 2236 (to be codified at Securities Exchange Act of 1934, § 27A, 15 U.S.C. § 78aa–1). The President signed the bill on December 19, 1991.

This action was commenced on November 16, 1989. Congress' recent decree therefore applies, compelling this Court to determine the governing statute(s) of limitations.

Prior to the Supreme Court's decision in *Lampf,* the United States Court of Appeals for the Second Circuit also had adopted a uniform federal statute of limitations for § 10(b)/Rule 10b–5 actions. *See Ceres Partners v. GEL Associates,* 918 F.2d 349, 364 (2d Cir.1990). In doing so, the circuit court followed in the footsteps of the Seventh and Third Circuits. *See Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385, 1392 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *In re Data Access Systems Securities Litigation,* 843 F.2d 1537, 1545 (3d Cir.1988) (en banc), *cert denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). The Second Circuit, however, explicitly refused to address the retroactive effect of its ruling until the question was directly presented. *Ceres,* 918 F.2d at 364.

Such an opportunity first occurred in *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.), *vacated,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991) (*"Welch I"*). There, the Court of Appeals declined to

apply the new federal limitations period retroactively after conducting an analysis under the three-part test set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *See Welch I,* 923 F.2d at 993–95. Particularly, it found that *Ceres* overruled well-established precedent, and so was not foreseeable; that the purposes of the '34 Act would not be impaired by the continuation of the suit; and that the equities favored not denying the "plaintiffs' 'right to a day in court.'" *Id.* at 994–95 (quoting *Chevron,* 404 U.S. at 108, 92 S.Ct. at 356).

The Supreme Court then issued its decision in *Lampf* and granted certiorari, vacated, and remanded *Welch I* in light of both *Lampf* and *Jim Beam. See Northwest Savings Bank PaSA v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). Faced with such explicit direction, the Second Circuit felt compelled to vacate *Welch I* and to apply *Lampf* retroactively. *See Welch II,* 946 F.2d at 187.

The effect of Congress's recent pronouncement is to render *Welch II* a nullity.[2] Section 27A of the '34 Act provides that the applicable limitations law shall be "as such laws existed on June 19, 1991." It would appear then that *Welch I* has been "revived" and that the rule of the Second Circuit is that the uniform federal statute of limitations announced in *Ceres* and *Lampf* applies only to those cases filed on or after November 8, 1990. This is not such a case, so that the proper limitations period(s), as defined previously, must be determined.

### B. *The Applicable Limitations Periods*

District courts in the Second Circuit have traditionally applied the analogous statute of limitations period of the forum state to § 10(b) claims. *Welch I,* 923 F.2d at 993; *Ceres,* 918 F.2d at 349; *Armstrong v. McAlpin,* 699 F.2d 79, 86–87 (2d Cir.1983). In the Southern District of New York, courts employed both New York's statute of limitations for actions based upon fraud

and its borrowing statute. *See Armstrong,* 699 F.2d at 87; *Landy v. Mitchell Petroleum Technology Corp.,* 734 F.Supp. 608, 618 (S.D.N.Y.1990). Given the current state of affairs, this practice controls the present action.

In New York, an action based upon fraud must be commenced within six years of the commission of the fraud or two years from the discovery of the fraud, whichever is later. N.Y.Civ.Prac.L. & R. § 213(8); *Armstrong,* 699 F.2d at 87. However, with respect to nonresidents,

> [a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y.Civ.Prac.L. & R. § 202. This provision means that "in a § 10(b) action, the cause of action accrues 'where "its economic impact is felt, normally the plaintiff's residence."' Thus, if a suit brought in the 'place' of the plaintiff's residence would be time-barred, the suit in a New York federal court is time-barred." *Ceres,* 918 F.2d at 353 (citations omitted).

■■■ Section 27 of the '34 Act grants federal courts exclusive jurisdiction over claims brought under the Act. 15 U.S.C. § 78aa. If an individual plaintiff brings a § 10(b) action in its home state, the suit must be filed in the local federal district court. That court then applies the statute of limitations rule for § 10(b) actions of the circuit within which it sits. *Ceres,* 918 F.2d at 353. If that rule requires the court to apply an analogous law of the forum state, it must do so. Therefore, under the present scheme, a court utilizing New York's borrowing statute in a § 10(b)/Rule 10b–5 action must apply to each individual plaintiff the statute of limitations employed

---

**2.** This also seems to apply to *Anixter v. Home-Stake Production Co.,* 939 F.2d 1420 (10th Cir.), *amended,* 947 F.2d 897 (1991).

by the federal district court where that plaintiff actually resides. *Id.*

In the present action, there are 136 plaintiffs from 17 states. The Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits are represented. To determine whether any of the Plaintiffs are time-barred, the statute of limitations rule for each circuit as of June 19, 1991, must be determined, and then, in most instances, the analogous law of the representative state mandated by circuit rubric applied.

The defendants have not briefed what each of these rules might be. However, the limitations periods that apply to the residents of Delaware, New Jersey, New York, and Pennsylvania are readily apparent.

■ The § 10(b)/Rule 10b–5 claims of the plaintiffs from Delaware,[3] New Jersey,[4] and Pennsylvania [5] (the "Third Circuit Plaintiffs") must be dismissed as time-barred. This lawsuit was initiated after the Third Circuit adopted a uniform statute of limitations for § 10(b) claims in *Data Access.*[6] Its holding, that

> the proper period of limitations for a complaint charging violation of section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation.

843 F.2d at 1550, therefore applies to their claims.

**3.** There is one plaintiff from Delaware: W. Albert Forwood.

**4.** The New Jersey plaintiffs are: Deborah Du, Kenneth Marks, Joseph J. Massimino, and Jerry Souslain.

**5.** The Pennsylvania plaintiffs are: Alan Brooks, Lawrence Caprous, Ronald Childs, Richard Feher, Roger Laible, John Miller, Todd Vallin, and Michael P. Whelan.

**6.** The Third Circuit also held that *Data Access* was to be applied retroactively before *Lampf* was decided on June 20, 1991. *See Hill v. Equitable Trust Co.,* 851 F.2d 691, 698 (3d Cir. 1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989).

**7.** The New York plaintiffs are: David Aquino, Gerald W. Bartz, William Biven, David Borgioli,

■ This action was commenced on November 16, 1989. Both defendants prepared various documents associated with the sales of the limited partnerships in Sarasota Plaza. If these defendants have violated the '34 Act, the violations occurred at the latest on the dates of purchase of the limited partnership units. *Landy,* 734 F.Supp. at 618.

Paragraph 27 of the Amended Complaint alleges that "[d]uring the period from in or about September, 1984 to in or about September, 1986, the defendants made offers and sales of Sarasota Plaza Associates limited partnership interests to the plaintiffs and others, either directly or through the 118–119 Series Investor Partnerships." The next paragraph alleges that the Plaintiffs did not discover the alleged violations until January 1989.

Under the two-pronged approach adopted by the Third Circuit and the Supreme Court, the "3–year limitation is clearly to serve as a cutoff." *Lampf,* —— U.S. ——, 111 S.Ct. at 2782. Tolling does not apply to such claims. Therefore, because this suit was filed more than three years after the last alleged sale, the § 10(b) claims brought by the Third Circuit Plaintiffs against Eisenberg Honig and Stuart Becker are untimely and must be dismissed.

■ By the same token, the Defendants' motion to dismiss the § 10(b) claims brought by New York residents (the "New York Plaintiffs") on statute of limitations grounds must be denied.[7] Although the

Irvin Brown, Georgia Burnett, Jack Chudnoff, Edward Colburn, Marcia Corwin, Richard Daniels, Charles Domiano, Thomas Dowd, Richard Duran, Richard Eisenhauer, Ignatius Elefant, Ronald Enterline, Lawrence Fenske, Frank Ferrara, Richard Gasiuk, William Good, Robert Hauger, Walter Hermann, Woodrow Heslip, Richard Iwaniak, Marie Jeannot, Gerald Karelus, Donald Kenyon, Philip Kiefer, Rashad Kirdani, Brenda Kitchen, William Kray, William Malican, Bernard Morgenstern, Neil Morgenstern, Dale Morris, Glenn Morris, Ernest R. Oberholzer, Heinrich Pleesz, Frank Poniatowski, Richard Portes, Glenn Potkowa, Judson Price, Paul Przylbylski, Robert W. Shelli, Peter Small, James Strain, Irene Yuss–Tuft, Ruth Vogt, Margaret Wietig, Arthur Workman, Jr., Richard Wozniak, and Edward Yourdan.

**1024**

Second Circuit adopted a uniform federal limitations period prior to June 20, 1991, *see Ceres,* 918 F.2d at 364, it explicitly had declined to apply it retroactively as of that date, *see Welch I,* 923 F.2d at 995. New York's six-year statute of limitations for fraud actions therefore governs the claims of its residents. *Armstrong,* 699 F.2d at 86–87. Since the present action was filed within six years of when the fraud is alleged to have occurred, these actions are timely, and the Defendants' motion to dismiss the § 10(b) claims of the New York Plaintiffs on this ground is denied with prejudice.

As to the remaining Plaintiffs, the Defendants' motion to dismiss their § 10(b) claims on statute of limitations grounds is denied without prejudice. Leave is granted to renew the motion upon a full briefing, if necessary.

## II. Rule 9(b)

The Defendants both argue that the Plaintiffs have failed to plead their § 10(b)/Rule 10b–5 claims against them with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. The Plaintiffs contend that they have met its standard, and in particular that scienter can be inferred from the face of the complaint.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). It is well-settled that this requirement applies to claims alleging violations of § 10(b) of the '34 Act and Rule 10b–5. *See, e.g., Kramer v. Time Warner Inc.,* 937 F.2d 767 (2d Cir.1991); *Luce v. Edelstein,* 802 F.2d 49 (2d Cir.1986). As stated in *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987):

> Rule 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to ... reputation or goodwill; and (3) reducing the number of strike suits.

■■■ If a particular matter is peculiarly within the defendant's knowledge, however, the pleadings need only state the facts upon which the belief of such knowledge is based. Additionally, although scienter may be averred generally, the pleadings must present a factual basis giving rise to a strong inference of fraudulent intent. *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991).

### A. *Stuart Becker & Co.*

As to Stuart Becker, the amended complaint alleges that

50. The forecasts and projections prepared by Becker included a "Statement of Forecasted Taxable Income" for Sarasota Plaza Associates, which falsely forecasted that Sarasota Plaza Associates (a) would be entitled to deductions for depreciation and interest expenses of $521,201 and $1,876,260, respectively, for the last six months of 1985, of $1,042,401 and $4,180,265 for 1986 and of sums in excess of $2.5 million for each and every subsequent year through 2004; and (b) would be entitled to claim a taxable loss of $1,864,687 for the last six months of 1985, of $4,101,090 for 1986 and of substantial amounts for every subsequent year through 1997. Also included was a "Forecasted Statement of Cash Flow" for Sarasota Plaza Associates, which falsely forecasted that Sarasota Plaza Associates would have sufficient funds to make cash distributions to the Investor Partnerships in 1985 and in each succeeding year.

51. The forecasts and projections prepared by Becker were expressly based upon, and assumed the validity of each of the following:

(a) that Sarasota Plaza Associates had purchased the Sarasota Property from North American as of October 31, 1984 for $22,763,000;

(b) that North American had purchased the Sarasota Property from

Rothschild Registry Properties Corp. as of October 31, 1984 for $22,500,000;

(c) that Rothschild Registry Properties Corp. had purchased the Sarasota Property "from an entity which is and was unrelated to the parties to this transaction, as of October 21, 1984, for an acquisition cost of $22,500,000"; and

(d) that Sarasota Plaza Associates had delivered a United First Federal Bank Building Purchase Money Note to North American, which was inclusive of and wrapped around all existing mortgages on the Sarasota Property in the sum of $18,500,000.

52. The defendant Becker knew, or should of known, that each of the aforementioned assumptions was false.

53. The Private Placement Memoranda failed to disclose any significant details concerning the identity and background of the actual promoter and sponsor of such syndications, namely Barry Trupin. Furthermore, such Memoranda contained no significant information regarding the prior performance of Barry Trupin and the Rothschild Group. In particular, they failed to make any disclosure of the sponsor's and promoter's prior audit history.

54. On information and belief, it is and has been the routine policy of the Internal Revenue Service to disallow "tax shelters" organized by or on behalf of Barry Trupin, and many audits of Trupin tax-shelter partnerships were ongoing at the time the Private Placement Memoranda were prepared and distributed.

55. Becker failed to exercise ordinary care in the performance of its professional duties and responsibilities in the issuance of the forecasts and projections for Sarasota Plaza Associates, and knew or should have known that plaintiffs reasonably and justifiably rely thereon in purchasing limited partnership units in the 118–19 Series Investor Partnerships and in Sarasota Plaza Associates.

The actual series of events that the Plaintiffs allege took place instead of the assumptions Stuart Becker relied on (as set out in ¶ 51) are set forth in ¶¶ 30–38 of the amended complaint. The amended complaint seeks to hold Stuart Becker liable both as a primary wrong-doer and as an aider and abettor under § 10(b).

Of the above paragraphs, only ¶ 50 and ¶ 51 satisfy Rule 9(b)'s particularity requirement. These paragraphs allege what was purported to be the series of transactions relied upon in making the forecasts and the forecasts themselves. Earlier in the complaint, it is alleged that another series of transactions actually took place and that the forecasted benefits of the limited partnership never materialized. These pleadings pass muster under Rule 9(b). *See DiVittorio*, 822 F.2d at 1248.

However, the other paragraphs fail to meet the rule's particularity requirement, and no facts are alleged from which an inference of scienter can be raised. For example, ¶ 53 alleges that the Private Placement Memoranda failed to disclose Trupin's background and audit history. Yet this information is not linked to Stuart Becker's activities. Moreover, what Trupin's "audit history" is is a question left unanswered. The complaint only alleges, upon information and belief, that it is standard policy of the Internal Revenue Service to disallow the limited partnerships. While pleadings based upon information and belief may be satisfactory in certain instances, typically when a defendant is alleged to be an insider, a pleading still must provide facts upon which the belief is founded. The Plaintiffs have failed to provide such facts. *See id.*

Moreover, the Plaintiffs have failed to provide any hint of a scienter allegation. Paragraph 52 merely states that Stuart Becker "knew, or should have known" that the assumptions it was provided were false. "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' An ample factual basis must be supplied to support the charges." *O'Brien*, 936 F.2d at 676 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)).

Here, as in *O'Brien*, the Plaintiffs allege that Stuart Becker should have been aware of the unlikelihood of success of the limited partnership through its role as auditor. To do so, the Plaintiffs would have to allege facts showing that Stuart Becker was reckless in performing its duties or that it had a clear motive for committing the fraud. As to the former, the complaint only alleges that Stuart Becker acted without ordinary care and fails to allege any reckless behavior on its part that would overcome the express disclaimers in the Memorandum. *See id.* at 676–77. As to the latter, the Plaintiffs do not allege that Stuart Becker was an insider. Cases such as *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989) are therefore inapposite. *See DiVittorio*, 822 F.2d at 1249. They also do not allege any facts from which a knavish desire on Stuart Becker's part can be inferred. The primary wrongdoer allegations are inadequately pleaded.

■ Within the same count, the Plaintiffs also appear to allege an aider and abettor claim under § 10(b) against Stuart Becker. Amended Complaint ¶ 63. To state such a claim, a plaintiff must allege:

(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;
(2) "knowledge" of this violation on the part of the aider and abettor; and
(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir.1985); *see also Morin*, 747 F.Supp. at 1070–71. "[I]naction can provide a basis for liability, in the absence of a duty to act, only when 'designed intentionally to aid the primary fraud.'" *National Union Fire Insurance Co. v. Turtur*, 892 F.2d 199, 206–07 (2d Cir.1989) (quoting *Armstrong*, 699 F.2d at 91).

■ Rule 9(b)'s particularity requirements also apply to an aiding and abetting claim. *See Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F.Supp. 256, 260 (S.D.N.Y.1989). The Plaintiffs have failed to plead that Stuart Becker possessed the requisite scienter or that it acted recklessly in performing its duties. *Supra.* They therefore have failed to plead the second two requirements of such a claim with the requisite particularity. *Id.* Moreover, as a general matter, an aider and abettor allegation should be set forth as a separate claim for relief, and not lumped into a general shotgun § 10(b) allegation. *See National Union Fire Insurance*, 892 F.2d at 206.

The Plaintiffs have failed to plead their alleged claims for relief under the '34 Act against Stuart Becker with the particularity required by Rule 9(b). The claims are therefore dismissed, with leave granted to replead.

### B. *Eisenberg Honig & Fogler*

■ As to Eisenberg Honig, the amended complaint alleges that

56. Eisenberg Honig has acted for a number of years as the attorneys and promoters with Rothschild Group entities in connection with various equipment leasing "tax shelter" syndications. In 1984, Eisenberg Honig was retained by the Rothschild Group to act as counsel for Sarasota Plaza Associates. In that regard it prepared the Sarasota Plaza Associates Memoranda and prepared and delivered the tax opinion letters contained in the Sarasota Plaza Associates Memoranda.

57. Eisenberg Honig knew, or should have known, that under the regulations promulgated pursuant to the Securities Act, the prior history of the sponsor of a syndicated offering is a material fact which should be disclosed to investors. Eisenberg Honig knew or should have known that, at the very time that Sarasota Plaza Associates units were being offered for sale, many Internal Revenue Service audits of "tax shelters" organized by entities within the Rothschild Group were actually in progress. Nevertheless, the Sarasota Plaza Associates Memoranda prepared by Eisenberg Honig contained no such prior history of the Rothschild Group entities or the individuals in control thereof.

58. Eisenberg Honig prepared tax opinion letters which were included as an exhibit to the Sarasota Plaza Associates Memoranda, in which Eisenberg Honig represented that it was its opinion that it was more likely than not that the favorable tax treatment described in the Sarasota Plaza Associates Memoranda would, in fact, be given to the subject transactions.

The amended complaint seeks to hold Eisenberg Honig liable both as a primary wrong-doer and as an aider and abettor under § 10(b).

The amended complaint fails to meet Rule 9(b)'s particularity requirement here as well. First, ¶ 57 fails to set forth the proceedings of which the attorneys should have been aware and the regulations imposing such a duty. Second, ¶ 58 merely summarizes the conclusion of the opinion letter contained in the Offering Materials. No specific facts are provided; only the type of blanket allegations that Rule 9(b) protects against.

Third, ¶ 56 seems to try to raise an inference of scienter. However, it merely states that Eisenberg Honig was retained and that it provided tax opinions. The Plaintiffs do not allege that Eisenberg Honig was an insider, so that relaxed pleading is unavailable. The complaint simply fails to allege that Eisenberg Honig had any reason to commit the alleged fraud and that its actions were egregious enough to meet the applicable standard of care to infer scienter.

Finally, it appears that the amended complaint also alleges an aider and abettor claim against Eisenberg Honig. For essentially the same reasons as discussed above in relation to Stuart Baker, this allegation also fails to meet Rule 9(b)'s particularity requirement.

The Plaintiffs have failed to plead their alleged claims for relief under the '34 Act against Eisenberg Honig with the particularity required by Rule 9(b).[8] The claims are therefore dismissed, with leave granted to replead.

### III. The Pendent Claims

██ The Plaintiffs argue that, even if the § 10(b) claims against Eisenberg Honig and Stuart Becker are dismissed, the Court should retain pendent jurisdiction over the state claims against the two. Complete diversity among the parties is lacking, so pendent jurisdiction is the only means by which jurisdiction can be retained.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) set forth the general standards for pendent jurisdiction. There, the Court noted that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Under this rubric, the state claims against Eisenberg Honig and Stuart Becker should be dismissed without prejudice for lack of jurisdiction.

The plaintiffs also ask the Court to exercise pendent party jurisdiction over the state claims brought against Eisenberg Honig and Stuart Becker. Given the current posture of the proceedings, however, it would be imprudent to address this argument at this time.[9] It may be renewed at such time as is necessary.

### Conclusion

For the reasons set forth above, the claims against Eisenberg Honig and Stuart Becker based upon alleged violations of

---

**8.** The Plaintiffs actually failed to present any argument in opposition to Eisenberg Honig's Rule 9(b) motion. At that time, *Lampf* governed the dispute and they seem to have assumed that the allegations against the firm were time-barred. *See* Memorandum in Opposition 10 (October 3, 1991). Nevertheless, their memorandum in opposition to Stuart Becker's motion addresses primarily the same issues. Their arguments there thus were also treated as in opposition to Eisenberg Honig's motion.

**9.** Because the Plaintiffs' § 10(b) claims, except for those of the Third Circuit Plaintiffs, are dismissed with leave granted to replead, this argument would be more properly addressed upon a proper repleading and a renewal of the motion to dismiss on statute of limitations grounds. At that point there will be two sets of plaintiffs, those with barred § 10(b) claims and those with timely § 10(b) claims, and a clearer basis from which to address this argument.

§ 10(b) of the '34 Act brought by the Third Circuit Plaintiffs are dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., as time-barred. The § 10(b) claims brought by the remaining Plaintiffs are dismissed under Rule 9(b) with leave granted to replead. The remaining state claims against the two defendants are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

It is so ordered.