Kenneth L. WALSCHE and
Mary Audree Walsche

v.

**FIRST INVESTORS CORP.**

Civ. No. 2:91CV00178(AHN).

United States District Court,
D. Connecticut.

April 1, 1992.

---

L. Douglas Shrader, Beverly Stauffer Knapp, Zeldes, Needle & Cooper, Bridgeport, Conn., for plaintiff.

Larry R. Lavoie, Kirkpatrick & Lockhart, Washington, D.C., Benjamin H. Green, Kelley, Drye & Warren, Stamford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

NEVAS, District Judge.

In this securities fraud action grounded in federal and state law, Kenneth L. Walsche and Mary Audree Walsche (the "Walsches") sue their stockbroker, First Investors Corporation ("First Investors"), to recover a substantial portion of their life savings they claim they lost when First Investors fraudulently sold them shares of a mutual fund that consisted of junk bonds. Pursuant to Rules 9(b) and 12(b)(6), Fed. R.Civ.P., First Investors now moves for dismissal of the entire complaint. The motion raises a unique issue: Whether to apply the new rule of law announced in *Ceres Partners v. GEL Assocs.*, 918 F.2d 349 (2d Cir.1990), to a cause of action that arose prior to the date of that decision but was not filed until after that case was decided? For the reasons that follow, the court grants the motion to dismiss (filing no. 10) in its entirety.

### Applicable Legal Standard

When considering a motion to dismiss the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Corcoran v. American Plan Corp.*, 886 F.2d 16, 17 (2d Cir.1989). Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Patton v. Dole*, 806 F.2d 24, 30 (2d Cir. 1986). "The issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting

to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). Thus, the question for the court to decide is "whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims." *Id.* at 48.

## Background

In the summer of 1985, the Walsches were in their early sixties, semi-retired and had placed their savings in passbook accounts and bank certificates of deposit. (Compl. ¶ 5). The Walsches were approached by a friend's son, Randolph Ross ("Ross"), who was a sales representative for First Investors. (Compl. ¶ 4). Ross advised the Walsches to invest their savings in the First Investors Fund for Income ("the Fund"), a "very secure" mutual fund that consisted of high grade corporate bonds. (Compl. ¶ 6). A division manager, Donald LeBlanc ("LeBlanc") also represented to the Walsches that the Fund was comprised of approximately 95% "grade A" corporate bonds and 5% "grade B" corporate bonds. (Compl. ¶ 7). Contrary to these representations, the Fund did not contain high grade corporate bonds. Instead, the Fund emphasized investment in non-investment grade or unrated bonds, i.e., "junk bonds." (Compl. ¶ 10). Ultimately, in three installments between July 24, 1985 and May 2, 1987, the Walsches purchased a fifty-thousand dollar interest in the Fund. (Compl. ¶ 8).

In May 1987, LeBlanc informed the Walsches that First Investors was "capping off" the Fund in order to make it more secure, and encouraged them to invest more of their savings in the Fund. They did, bringing their total investment to in excess of ninety-five thousand dollars. (Compl. ¶¶ 9–10).

In February 1990, the Walsches received a First Investors newsletter that indicated that First Investors was modifying the Fund's portfolio by replacing lower-rated bonds with bonds with a stronger credit rating. The Walsches allege that the newsletter was misleading because it did not disclose the Fund's emphasis in high-risk junk bonds. (Compl. ¶ 19). In early March 1990, the Walsches' dividend checks began to decrease in amount and when they questioned First Investors branch manager about the decline they were told that the decrease was a fluctuation that would correct itself. (Compl. ¶ 20).

On March 7, 1990, the Walsches instructed First Investors to liquidate their shares in the Fund. They allege that they sustained a loss in excess of $60,000. (Compl. ¶¶ 21–22 & 26). In September 1990 the Walsches read an article in the *Wall Street Journal* that described the Fund as a "junk bond mutual fund" and revealed that state securities administrators were investigating allegations that First Investors salespersons committed fraudulent sales practices. This action was initiated on February 20, 1991.

## *Discussion*

I. Lampf, Welch I and II, Ceres Partners and the Act

In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court held that actions brought pursuant to Section 10(b) of the Securities Exchange Act of 1934 (" '34 Act"), 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1991), must be brought within one year after the discovery of the facts constituting the violation and within three years of the violation. The three year limit serves as " 'an outside limit' " or "cutoff" for Rule 10b–5 claims, thereby rendering "unnecessary" the applicability of the equitable tolling doctrine. *Id.* 111 S.Ct. at 2782. Prior to *Lampf*, in *Ceres Partners*, 918 F.2d at 359, the Second Circuit also adopted a uniform one-year/three-year federal statute of limitations for Rule 10b–5 claims.[1] However, in *Ceres Partners* the

---

1. *Ceres Partners* followed similar rulings by the Seventh and Third Circuits. *See Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537, 1545 (3d

Second Circuit explicitly refrained from addressing the retroactive effect of its holding. *Id.* at 364.

The Second Circuit was presented with the opportunity to address the retroactive effect of *Ceres Partners* in *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.1990), vacated, — U.S. —, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991) ("*Welch I*"). In *Welch I*, the Second Circuit conducted the three-prong analysis set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971),[2] and held that the one-year/three-year federal statute of limitations did not apply retroactively to the facts in that case. *See also Levine v. NL Indus. Inc.*, 926 F.2d 199, 201–02 & n. 1 (2d Cir.1991). More specifically, the Second Circuit determined that (1) *Ceres Partners* overruled long-established precedent and thus was not foreseeable; (2) the suit would not impair the purposes of the '34 Act; and (3) the balance of the equities favored giving the plaintiffs their day in court. *Welch I*, 923 F.2d at 994–5. Subsequently, the Supreme Court granted certiorari in *Welch I*.

In light of its decisions in *Lampf* and *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) ("*Jim Beam*"), the Supreme Court vacated and remanded *Welch I* to the Second Circuit.[3] In *Welch v. Cadre Capital*, 946 F.2d 185 (2d Cir.1991) ("*Welch II*"), the Second Circuit reconsidered and vacated its ruling in *Welch I*, thereby reinstating the district court's judgment dismissing the plaintiffs' complaint on statute of limita-

tions grounds. In doing so, the Second Circuit held that the one-year/three-year federal statute of limitations announced in *Lampf* applied retroactively even though the underlying action was timely filed under clearly settled preexisting law.

On December 19, 1991, President Bush signed the Federal Deposit Insurance Corporation Improvement Act of 1991. Pub.L. No. 102–242, § 476, 105 Stat. 2236 (to be codified at Securities Exchange Act of 1934, § 27A, 15 U.S.C. § 78aa–1) ("the Act" or "Section 27A").[4] The Act amends the '34 Act by inserting a new Section 27A:

(a) EFFECT ON PENDING CAUSES OF ACTION.—The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

Section (a) of the Act affects precedent in two ways. First, it appears that *Lampf* is not applicable to actions pending when it was handed down. Indeed, Judge Sweet noted in *Ades v. Delloitte & Touche*, 1992 WL 6142, *1, 1992 U.S.Dist. LEXIS 12, *1 (S.D.N.Y. Jan. 3, 1992), that the Act "effectively bars the retroactive applicability of *Lampf*." Second, it appears that the Act vitiates *Welch II*. *See Alfadda v. Fenn*, 1992 WL 44369, *1, 1992 U.S.Dist. LEXIS 1958, *3 (S.D.N.Y. Feb. 21, 1992) (McKenna, J.) (the Act " 'rendered *Welch II* a nullity' "); *Ades*, 1992 WL 6142 *4 n. 2, 1992

Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).

**2.** In *Chevron*, the Court identified three factors for courts to evaluate when determining whether a particular holding should not be applied retroactively:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... Second, it has been stressed that we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Finally, we have weighed the inequity imposed by retroactive application, for where

a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id.* 404 U.S. at 106–07, 92 S.Ct. at 355 (citations and quotations omitted).

**3.** The court initially held a hearing on the motion to dismiss on July 30, 1991. For the reasons stated on the record, the court stayed the motion until the Second Circuit addressed *Welch I* on remand.

**4.** At a status conference held December 31, 1991, the court instructed the parties to submit supplemental memoranda limited to the issues presented by the Act.

U.S.Dist. LEXIS 12 *7 n. 2 ("[i]n view of the effect of the new legislation on *Lampf,* the relevance of *Welch II* appears to have been nullified"). As Judge Sweet noted recently in *Ahmed v. Trupin,* 781 F.Supp. 1017, 1022 & n. 2 (S.D.N.Y.1992):

> The effect of Congress's recent pronouncement is to render *Welch II* a nullity.... Section 27A of the '34 Act provides that the applicable limitations law shall be "as such laws existed on June 19, 1991." It would appear then that *Welch I* has been "revived" and that the rule of the Second Circuit is that the uniform federal statute of limitations announced in *Ceres* and *Lampf* applies only to those cases filed on or after November 8, 1990.

These interpretations of the Act were confirmed by the Second Circuit in *Henley v. Slone,* 961 F.2d 23, (2d Cir.1992) (Newman, J.). In *Henley,* the plaintiff brought his Rule 10b–5 securities action on September 12, 1989 for improper margin transactions that occurred in April 1987 and continued through October 1987. *Henley v. Slone,* 774 F.Supp. 98, 100–102 (D.Conn. 1991) (Daly, J.), *rev'd,* 961 F.2d 23 (2d Cir. 1992). The district court applied *Ceres Partners* retroactively in light of *Lampf* and *Jim Beam* and dismissed the action as time-barred. On appeal, the Second Circuit vacated the district court's judgment dismissing the action. The Second Circuit stated that the question before it was:

> [W]hether Congress intended to afford pre-*Lampf* litigants the benefit of more generous state of federal common law limitations periods or to afford them only whatever benefit they can derive from the law existing in the pertinent jurisdiction on June 19, 1991, including the law concerning both a new limitations period and the retroactivity of such a new limitations period.

*Henley,* 961 F.2d at 25.

The Second Circuit first noted that the "law of this Circuit as of June 19, 1991" was *Welch I,* i.e., the one-year/three-year limitations period announced in *Ceres Partners* with *Ceres Partners* "not to be applied retroactively as a routine matter."

*Id.* at 25. The court then noted that, "[o]n its face," the language of Section 27A

> appears to support [the] contention that Henley's suit is to be governed, not by automatic application of the state limitations period that preceded *Ceres Partners,* but by a case-specific determination of whether the retroactivity principles applied in *Welch I* make it inappropriate to apply the new limitations period.

*Id.* at 25. The court concluded:

> Despite the expectation of some supporters of section 27A that it would routinely apply a more generous state of federal common law limitations period to all suits pending on June 19, 1991, we see no escape from the clear statutory language requiring the application of "the laws applicable to the jurisdiction, including principles of retroactivity." In Connecticut, where Henley's suit was filed, that means the one-year/three-year rule of *Ceres Partners* applied sparingly in light of the retroactivity principles enunciated in *Welch I;* if it would be inequitable under *Welch I* to apply *Ceres Partners* to Henley's suit, then the more generous limitations period of prior state law applies.

*Id.* at 26. Accordingly, the court remanded the action so that the district court could consider "the timeliness of Henley's suit under *Ceres Partners* to whatever limited extent that decision may properly be applied retroactively under *Welch I*" and the timeliness of the suit under prior state law, should the district court determine that *Ceres Partners* should not be applied retroactively.

### A. The Present Action

First Investors advances essentially one argument in support of its motion to dismiss. First Investors contends that the one-year/three-year rule announced in *Ceres Partners* applies to this action and, consequently, since the Walsches did not file their complaint until more than three years after the securities violations allegedly occurred, this suit is time-barred. Indeed, First Investors argues that the application of *Ceres Partners* to this action would be prospective, not retroactive, since

the Walsches did not file the complaint until February 19, 1991, which is more than three months after the Second Circuit decided *Ceres Partners.*

The Walsches' response is several-fold. The Walsches point out that this suit presents unusual circumstances: the cause of action they plead arose before *Ceres Partners* was announced, but their complaint was not filed until shortly after the decision. Borrowing the reasoning of the Fifth and Ninth Circuits when those courts were presented with factually similar issues concerning the retroactivity of limitations periods in Section 1983 actions, the Walsches argue that the new statute of limitations should not be applied automatically to bar claims that accrued before *Ceres Partners* was decided. The court disagrees.

### 1. Ceres Partners: Prospective or Retroactive?

■ In *American Trucking Ass'ns, Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 2335, 110 L.Ed.2d 148 (1990), the Supreme Court observed that

> [i]t is, of course, a fundamental tenet of our retroactivity doctrine that the prospective application of a new principle of law begins on the date of the decision announcing the principle.

*See also Florida v. Long,* 487 U.S. 223, 108 S.Ct. 2354, 2363–64, 101 L.Ed.2d 206 (1988); *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 1111, 103 S.Ct. 3492, 3513, 77 L.Ed.2d 1236 (1983); *Chevron,* 404 U.S. at 99, 92 S.Ct. at 351–52; *City of Phoenix v. Kolodziejski,*

**5.** This conclusion is buttressed by *Finkel v. Stratton Corp.,* 754 F.Supp. 318 (S.D.N.Y.1990) ("[n]o question of retroactivity arises because the Third Circuit decided *Data Access* on April 8, 1988 ... and plaintiffs at bar filed their complaint on June 1, 1988") and *Goins v. Teamsters Local 639,* 598 F.Supp. 1151 (D.D.C.1984) (*Chevron* did not apply to case brought after Supreme Court's announcement of new six-month statute of limitations for breach of duty of fair representation claims). *See also Klein,* 770 F.Supp. at 84.

Furthermore, a close reading of *Welch I* suggests that the Second Circuit understood that *Ceres Partners* governed all future cases. In *Welch I,* Judge Newman observed that a Rule

399 U.S. 204, 216, 90 S.Ct. 1990, 1997–98, 26 L.Ed.2d 523 (1970).

This action was commenced on February 20, 1991—several months after *Ceres Partners* was announced. Logically, the application of the rule announced in *Ceres Partners* is prospective, not retroactive, and as a consequence, the *Chevron* retroactivity doctrine does not apply at all to this case.

■ Although the Walsches filed their suit within a year of discovering the fraud allegedly committed by First Investors, they did not do so within the three year "outer limit" set forth in *Ceres Partners,* since the fraud allegedly was committed between July 1985 and May 1987. Under *Ceres Partners,* "in no case may claims based on fraudulent actions occurring outside the three-year period be maintained," *Klein v. Goetzmann,* 770 F.Supp. 78, 85 (N.D.N.Y.1991). *See also Farley v. Baird, Patrick & Co., Inc.,* 750 F.Supp. 1209, 1214 (S.D.N.Y.1990) ("[t]he three-year outside limitation is an absolute limitation"). Therefore the claims arising from First Investors' allegedly fraudulent conduct that occurred more than three years from the date the complaint was filed are time-barred.[5]

### 2. Accrual of the Cause of Action

The Walsches forcefully argue that the courts in *Finkel, Goins* and *Klein* overlooked a more fundamental inquiry—whether the cause of action accrued prior to the date of the case announcing new law.[6] As the Supreme Court observed in *American Trucking:*

> 10b–5 action should not be dismissed on the basis of a "limitations period not yet in existence at the time suit was commenced". *Welch I,* 923 F.2d at 995. He also noted that "The purposes of the '34 Act will not be impaired by continuation of a handful of lawsuits filed within the longer time limits of previously applicable state law." *Welch I,* 923 F.2d at 995.

**6.** The courts in *Klein* and *Finkel* did not consider the accrual issue in their opinions. In fact, the court in *Klein* appears to have overlooked *Usher v. City of Los Angeles,* 828 F.2d 556 (9th Cir.1987) and *Hanner v. State of Mississippi,* 833 F.2d 55 (5th Cir.1987) (both addressed below), since it remarked that "[t]he plaintiffs cite no case, and the court could not locate a case,

The determination of whether a constitutional decision of this Court is retroactive—that is, whether the decision applies to conduct or events that occurred before the date of the decision—is a matter of federal law.

*American Trucking,* 110 S.Ct. at 2330. Indeed, although the court in *Klein* quoted *American Trucking* for the proposition that "the prospective application of a new principle of law begins on the date of the decision announcing the principle," it overlooked the next sentence in *American Trucking:* "This tenet of retroactivity, however, does not define the conduct to which *American Trucking Ass'ns, Inc. v. Scheiner* [483 U.S. 266, 97 L.Ed.2d 226 (1987) ] [the case announcing new law] prospectively applies: does it apply to the flat taxing of highway use or to the *collection* of taxes for highway use after the date of that decision?" *Id.* 110 S.Ct. at 2335–36 (emphasis in original). The Court concluded that "the critical event for prospectivity is 'the occurrence of the underlying transaction, and not the payment of money therefor.' " *Id.* at 2336.

### a. *Hanner and Usher*

Next, the Walsches point to *Hanner* and *Usher,* where the Fifth and Ninth Circuits were confronted with cases chronologically identical to the case at bar. In both *Hanner* and *Usher,* the plaintiffs' causes of action under Section 1983 arose or accrued prior to the date of *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which had the effect of shortening the statute of limitations for Section 1983 actions filed in California from three years to one year, but were not filed until after *Wilson* was decided. As the court in *Usher* observed:

> The question here is whether to apply the new rule of law enunciated in *Wilson* retroactively to a cause of action that arose prior to the date of that decision but was not filed until after that case was decided, where the effect of doing so would be to impose a shortened statute

which considered the retroactivity doctrine where the complaint was filed *after* the filing of

of limitations that would serve to bar the plaintiff's claim.

*Usher,* 828 F.2d at 559.

In *Usher,* the court held that in the states that constitute the Ninth Circuit, if the effect of the new law announced in *Wilson* was to shorten the limitation period for Section 1983 actions, the new limitation period for causes of action arising prior to *Wilson* shall be either "(1) the pre-*Wilson* period, commencing at the time the cause of action arises, or (2) the post-*Wilson* decision, whichever expires first." *Usher,* 828 F.2d at 561. Applying the holding to the case before it, the court concluded that the plaintiff's action was timely.

In *Hanner* the court noted that "section 1983 plaintiffs whose causes of action accrued before any change in the law was indicated [but who filed suit after the new law was announced] must be afforded a *reasonable time* within which to bring their actions before they can be barred as untimely." *Hanner,* 833 F.2d at 57 (emphasis in original). Nevertheless, the court concluded that the plaintiff's action was time-barred.

Here, there is no question that the causes of action pursued by the Walsches accrued prior to the day *Ceres Partners* was announced. The Walsches allege that they purchased shares in the Fund between July 1985 and May 1987. Furthermore, they allege that they did not discover the fraud until September 1990. *Ceres Partners* was decided by the Second Circuit on November 8, 1990. Accordingly, it is not arguable that the conduct and events that constitute the basis for the Walsches' suit arose prior to *Ceres Partners.*

### b. *The Law in the Second Circuit*

As a preliminary observation, the court's research reveals that the Second Circuit has neither adopted the reasoning of *Hanner* and *Usher* nor cited the cases for any proposition. Perhaps the Second Circuit never has viewed cases such as *Hanner* and *Usher* as raising retroactivity issues.

the complaint." *Klein,* 770 F.Supp. at 84.

Perhaps the Second Circuit has simply never passed on this issue. Regardless of the explanation, this court is not obligated to follow decisions of other circuit courts, *see Securities and Exchange Comm'n v. Shapiro*, 494 F.2d 1301, 1306 n. 2 (2d Cir.1974); *United States v. Waldbaum, Inc.*, 612 F.Supp. 1307, 1313–14 (D.Conn.1985), *aff'd sub nom., United States v. Korfant*, 771 F.2d 660 (2d Cir.1986), although here it has given "respectful consideration," *Overland Exp., Inc. v. International Multifoods*, 765 F.Supp. 1386, 1387 (S.D.Ind.1990), to *Hanner* and *Usher*.

■ Moreover, this court must follow circuit precedent, irrespective of its own views concerning the advantages of precedent in sister circuits. *See Ithaca College v. N.L.R.B.*, 623 F.2d 224, 228–29 (2d Cir.), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *United States v. DeFabritus*, 605 F.Supp. 1538, 1544 (S.D.N.Y. 1985). In the Second Circuit there is little debate that announcements of new law apply prospectively, *Byrne v. Buffalo Creek R. Co.*, 765 F.2d 364, 366 (2d Cir.1985) (generally court must apply law in effect at time it renders decision) (citing *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)); *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 240 (2d Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Kremer v. Chemical Const. Corp.*, 623 F.2d 786, 788 (2d Cir.1980), *aff'd*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("[t]he general rule of long standing is that judicial precedents normally have retroactive as well as prospective effect"); *Ames v. Merrill Lynch, Pierce, Fenner & Smith*, 567 F.2d 1174, 1177 (2d Cir.1977) ("[a] court must apply the law as it exists at the time of its decision, even where the law has changed during the pendency of the action").[7] *But see Franklin Mint Corp. v. Trans World Airlines, Inc.*, 690 F.2d 303,

311–12 (2d Cir.1982), *aff'd*, 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984) (explicit prospective ruling by Second Circuit). This court will not disavow such longstanding precedent, for "it is not the function of inferior federal courts to declare new doctrines" of law. *Welch v. Cadre Capital*, 735 F.Supp. 467, 477 (D.Conn. 1989) (citing *C.D.R. Enters., Ltd. v. Bd. of Educ. of New York*, 412 F.Supp. 1164, 1170 (E.D.N.Y.1976), *aff'd sub nom., Lefkowitz v. C.D.R. Enters., Ltd.*, 429 U.S. 1031, 97 S.Ct. 721, 50 L.Ed.2d 742 (1977)).

### c. *Jim Beam*

Finally, the Supreme Court's discussion of new rules of law in *Jim Beam* offers guidance. There, the Court addressed the issue of "whether it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *Jim Beam*, 111 S.Ct. at 2446. At the outset, the Court noted that "[i]n the ordinary case no question of retroactivity arises" because typically "principles and precedents antedate the events on which the dispute turns" and, consequently, "the court merely applies legal rules already decided, and the litigant has no basis on which to claim exemption from those rules." *Id.* at 2442–3.

The Court then examined the three ways in which a "choice-of-law problem may be resolved." The first practice, which is "overwhelmingly the norm," is for appellate courts to make decisions fully retroactive, i.e., "apply[ ] [the new rule] both to the parties before the court and to all others by and against whom claims may be pressed." *Id.* at 2443. Next, "there is the purely prospective method of overruling," under which the court applies the new law to neither the parties in the "law-making decision" nor to parties "against or by whom it might be applied to conduct or

7. This is also the law in several other circuits. *See I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 416, (D.C.Cir.1987) ("judicial precedents apply not only prospectively but to all cases pending at the time they are decided"); *Mineo v. Port Authority of New York and New Jersey*, 779 F.2d 939, 943 (3d Cir.1985) ("a recent decision is generally applied even to a dispute that arose prior to court's holding"); *In re Disclosure of Grand Jury Material*, 821 F.2d 1290 (7th Cir.1987) ("once a new civil rule has been announced, a court will apply the new rule to resolve a current case even if the acts underlying the dispute occurred prior to the announcement of the rule").

events occurring before that decision." *Id.* The Court noted that under the purely prospective method, the new decision is effective "with respect to all conduct occurring after the date of that decision," but that the Court has "infrequently" resorted to this method. *Id.* Finally, the Court discussed "modified, or selective, prospectivity," a method by which a court applies "a new rule in the case in which it is pronounced" but then "return[s] to the old one with respect to all others arising on facts predating the pronouncement."

In its plurality opinion, the Court went on to reject the possibility of selective prospectivity in civil matters, something it already had done in the criminal context. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). As Judge Newman noted in *Welch II,* by rejecting selective prospectivity, the Court "ruled that in the civil context it is error not to apply retroactively to all cases pending on direct review a rule of federal law previously applied retroactively in the case announcing the rule." *Welch II,* 946 F.2d at 186.

■■■ *Jim Beam,* thus, is instructive in several ways. Foremost, *Jim Beam* implicitly makes clear that "choice-of-law" problems are resolved by appellate courts in the course of announcing new rules. The task is not to be undertaken by this court. Second, by foreclosing the possibility of selective prospectivity in civil litigation, the Court precluded what the Walsches seek: courts may not "apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others *arising on facts predating the pronouncement."* *Jim Beam,* 111 S.Ct. at 2444 (emphasis added). In *Ceres Partners,* the Second Circuit announced new law and then applied that new law to the dispute before it. *Ceres Partners,* 918 F.2d at 364 ("[a]pplying this federal period of limitations, we affirm the district court's dismissal of Ceres's complaint"). Consequently, this court cannot return to "the old [rule] with respect to ... [a case] arising on facts predating the pronouncement." Finally, Justice White considered selective pros-

pectivity a technique that never had applied in the civil context. *Jim Beam,* 111 S.Ct. at 2448 & n. * (White, J., concurring) ("no precedent in civil cases applying a new rule to the parties in the case but not to others similarly situated"). *See also Welch II,* 946 F.2d at 185. As the Court noted in *Jim Beam,* "[t]he applicability of rules of law are not to be switched on and off according to individual hardship." *Jim Beam,* 111 S.Ct. at 2448. In light of the above discussion, this court has neither the keys to the switch box nor the prerogative to use them.

### Conclusion

The limitation period governing this action is the "limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991." *Ceres Partners* was decided November 8, 1990. *Welch I* was decided January 22, 1991. This action was commenced February 20, 1991. Under the "law applicable in [this] jurisdiction" at that time to claims under Rule 10b, the Second Circuit had "opted for a uniform federal limitations period and selected the limits specified in sections 9(e) and 18(c) of the '34 Act, 15 U.S.C. §§ 78r(e), 78r(c)—one year from discovery of the violation and three years from the violation." *Welch I,* 923 F.2d at 990; *see also Ceres Partners,* 918 F.2d at 364. While the Walsches filed this action within one year from the discovery of securities violations, more than three years had passed between the time the violations occurred and the date the complaint was filed. Consequently, this lawsuit was untimely filed.

In the absence of a viable federal securities law count, counts two through six, all of which are based on state law, are without an anchor claim for pendent jurisdiction. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court observed that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." The Court went on to hold that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Id.* If "all federal-law claims are eliminated before trial, the balance of

factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). *See also Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir. 1988). The court has weighed these factors carefully and concludes that it will not exercise pendent jurisdiction over the state-law claims in the Walsches' complaint.

Accordingly, First Investors' motion to dismiss (filing no. 10) is granted in its entirety; count one is dismissed as time-barred and counts two through six are dismissed for lack of pendent jurisdiction.

SO ORDERED.