Sam SHOCHAT, Phoebe Shochat,
Isidore Shochat and Rose
Shochat, Plaintiffs,

v.

Stanley WEISZ, Defendant.

No. CV–87–0935 (ADS).

United States District Court,
E.D. New York.

Feb. 21, 1991.

Haas, Greenstein, Samson, Cohen & Gerstein, P.C., New York City, for plaintiffs; Robert I. Cantor, Leslie S. Soclof, of counsel.

Michael F. Dennis, Garden City, N.Y., for defendant; Saul I. Weinstein, of counsel.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The defendant in this securities litigation moves pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings and also for summary judgment under Fed.R.Civ.P. 56(b) and (c), as to all of the causes of action asserted against him in the complaint. The plaintiffs cross-move pursuant to Fed.R.Civ.P. 15(a), for leave to amend the complaint to withdraw one of the causes of action and also to increase the amount alleged in the *ad damnum* clause.

For the reasons that follow, the defendant's motion for judgment on the pleadings is granted, and the motion for summary judgment is denied. The plaintiffs' cross-motion to amend the complaint is also granted.

## I. FACTUAL BACKGROUND

The following facts have been gleaned from the complaint, all of which are deemed true for purposes of the motion for judgment on the pleadings:

The plaintiffs, who are related to each other,[1] have been and continue to be associated together in various business ventures. The defendant Stanley Weisz ("Weisz"), is a certified public accountant, engaged in the practice of professional accounting. Among the various accounting services performed by Weisz is the preparation of tax returns and the furnishing of advice relative to tax matters and planning.

Weisz began to perform accounting services for the plaintiffs sometime prior to 1977, and continued to do so until approximately 1983. The plaintiffs allege that during the course of rendering these services, Weisz represented to the plaintiffs that he regularly receives and reviews offerings by third parties of investment opportunities which are or could be recognized as "tax shelters". Weisz regularly communicated this information relative to various tax shelters to the plaintiffs. The plaintiffs further allege that being "inexpert and unsophisticated" (Complaint ¶ 7), they relied on Weisz' purported skill and expertise in such matters.

During this time, the plaintiffs made a series of passive investments believed to be tax shelters, allegedly based on the advice, representations and recommendations made by Weisz. According to the plaintiffs, they made these investments at the behest and encouragement of Weisz. As a result of these investments, the plaintiffs

---

1. The plaintiffs Phoebe Shochat and Sam Shochat are married to each other, as are the plaintiffs Rose Shochat and Isidore Shochat. In addition, Sam Shochat is the son of Isidore.

contend that "no income, and no return of investment was ever received by any plaintiff from any of the aforesaid 'Tax Shelters'.... [A]ll such ventures in which plaintiffs were induced to invest capital through the representations of the defendant aforesaid are and have long since been nonoperational and the financial investment of all investors has been lost" (Complaint ¶ 12).

Sometime in 1984, the plaintiffs were advised by the Internal Revenue Service ("IRS"), that the "tax shelters" that they invested in were disallowed, resulting in an alleged substantial underpayment of taxes, plus interest and penalties. The IRS offered a compromise to the plaintiffs if they acted within a prescribed time period. Acting with dispatch, the plaintiffs allege that they immediately advised Weisz of this, and claim that he assured the plaintiffs that he would take the necessary steps to rectify the situation with the IRS.

The plaintiffs allege that Weisz thereafter failed and/or refused to take the necessary steps to accept the offer of settlement by the IRS. As a result, the plaintiffs allegedly became liable to the IRS for substantial sums.

The plaintiffs commenced this action against Weisz on March 26, 1987, alleging the following causes of action (listed as "counts") in the complaint: (I) violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Rules of the Securities and Exchange Commission; (II) common-law fraud under New York law; (III) violation of New York General Business Law; and (IV) negligence (professional malpractice).

## II. THE MOTIONS

The defendant moves pursuant to Fed.R. Civ.P. 12(c) for judgment on the pleadings and also for summary judgment under Fed. R.Civ.P. 56(b) and (c), as to all of the causes of action asserted against him in the complaint. The plaintiffs oppose these motions and, in turn, cross-move pursuant to Fed.R.Civ.P. 15(a) for leave to amend the complaint to withdraw count III and also to increase the amount alleged in the *ad damnum* clause.

## III. DISCUSSION

The Court first will discuss the motions made by the defendant and then will address the plaintiffs' cross-motion for leave to amend.

## 1. DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS:

### (a) *Standard of Review.*

The applicable standard of review on a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is the same as that on a motion to dismiss under Fed.R. Civ.P. 12(b)(6) (*see Shaw v. Rolex Watch U.S.A., Inc.*, 745 F.Supp. 982, 984 [S.D.N.Y. 1990], *citing* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1367, at p. 518–19 [2d ed. 1990] ). That is, "the court should not dismiss the complaint ... unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' " (*Goldman v. Belden*, 754 F.2d 1059, 1065 [2d Cir.1985], *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957] ). The allegations of the complaint, of course, are to be accepted as true and all reasonable inferences are to be drawn favorably to the plaintiff (*see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974] ). The Court's function is merely to assess the legal sufficiency of the complaint and not to weigh evidence that might be adduced at trial (*see Goldman v. Belden, supra*, 754 F.2d at p. 1065).

With these principles in mind, the Court turns to the merits of the defendant's motion.

### (b) *Count I: Section 10(b) and Rule 10b–5.*

Section 10(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78j(b), provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate

commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5, promulgated by the Securities and Exchange Commission in 1948 pursuant to section 10(b) (reprinted in 17 C.F.R. § 240.10b–5 [1990] ), provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

To state a claim under section 10(b) or Rule 10b–5, the plaintiffs must allege the following essential elements:

"(1) damage to plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with an intent to deceive, manipulate or defraud, (4) in connection with the purchase or sale of securities and (5) furthered by defendant's use of the mails or any facility of a national securities exchange" (*Baum v. Phillips, Appel &*

*Walden, Inc.*, 648 F.Supp. 1518, 1524 [S.D.N.Y.1986], *aff'd*, 867 F.2d 776 [2d Cir.], *cert. denied*, [— U.S. ——] 110 S.Ct. 114 [107 L.Ed.2d 75] [1989], *quoting Lloyd v. Industrial Bio–Test Laboratories, Inc.*, 454 F.Supp. 807, 810 [S.D.N.Y.1978] ).

*See also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

In sum, the plaintiff must plead that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused him injury" (*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 [2d Cir.1985]; *see also Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961–62 [2d Cir.1987]; *A. Burton White, M.D., P.C. v. Beer*, 679 F.Supp. 207, 211–12 [E.D.N.Y.1988] ).

When pleading a claim under section 10(b), the plaintiff must aver the alleged fraudulent acts with particularity as required by Fed.R.Civ.P. 9(b) (*see Luce v. Edelstein*, 802 F.2d 49, 54 [2d Cir.1986] ). Although "knowledge" and "condition of mind" may be stated in general terms (*see* Fed.R.Civ.P. 9[b] ), the circumstances surrounding the alleged fraud must be pled with particularity (*Farley v. Baird, Patrick & Co.*, 750 F.Supp. 1209, 1217 [S.D.N.Y.1990], *quoting Eickhorst v. American Completion & Dev. Corp.*, 706 F.Supp. 1087, 1091 [S.D.N.Y.1989] ).

To satisfy the particularity requirement of Rule 9(b), the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements" (*Cosmas v. Hassett*, 886 F.2d 8, 11 [2d Cir.1989] ). Specifically, "the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation" (*Ouaknine v. MacFarlane*, 897 F.2d 75, 79 [2d Cir.1990] ).

■ Facts must be pled with sufficient particularity to support a "strong inference" that the defendant possessed the requisite fraudulent intent or scienter (*see Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 [2d Cir.1987], *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 [1988]; *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 [1976]). Moreover, such allegations may not merely rest upon statements based on "information and belief" (*see Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 [2d Cir.1987] [citations omitted]).

The particularity requirement of Rule 9(b) is designed to serve several important policies, such as to afford the defendant fair notice of the claims, to safeguard the defendant's reputation and also to inhibit the institution of "strike suits" (*see Ross v. Bolton*, 904 F.2d 819, 823 [2d Cir.1990]).

■ Applying these principles to the plaintiffs' Complaint here, the Court finds that the Complaint does not plead fraud with the requisite particularity to state a cause of action under section 10(b) or Rule 10b–5. Although the Complaint does articulate "facts" concerning the circumstances of the parties' relationship, it is devoid of any allegations of fraudulent intent or scienter on the part of Weisz in advising the plaintiffs of the various tax shelters that were later disallowed by the IRS.

Construing all reasonable inferences in the plaintiffs' favor which this Court must, paragraph 19—the only paragraph even mentioning fraud—could be read as alleging that Weisz was negligent in that he failed to adequately review and/or investigate the viability of the investments as tax shelters, despite his representations to the contrary. The Complaint only states in general, conclusory terms, however, that Weisz failed to disclose material facts which were false and misleading. Not a single factual assertion is made that would support the required "strong inference" of fraudulent intent.

In this regard, to the extent that the plaintiffs rely on the alleged negligence of Weisz for failing to conduct an adequate investigation into the financial viability of the investments as tax shelters, such allegations are insufficient to support a claim under section 10(b) and Rule 10b–5 of the securities laws, since it "is merely a charge of negligence" (*Zupnick v. Thompson Parking Partners*, [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,388, at p. 96,-911–12, 1990 WL 113197 [S.D.N.Y.1990]; *see also Ernst & Ernst v. Hochfelder, supra*, 425 U.S. at p. 200, 96 S.Ct. at p. 1384 [element of scienter required to support claim under section 10(b)]).

In addition, the plaintiffs have not even alleged facts showing that Weisz had a motive for committing fraud and a clear opportunity for doing so (*Spier v. Erber*, [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,287, at p. 96,320, 1990 WL 71502 [S.D.N.Y.1990], *quoting Beck v. Manufacturers Hanover Trust Co., supra*, 820 F.2d at p. 50). Further, the complaint states nothing, even in general terms, as to Weisz' state of mind at the time the alleged omissions or misrepresentations occurred that might support the plaintiffs' claim of fraud by demonstrating the knowledge of Weisz at the time that such statements were false (*cf. Soper v. Simmons Int'l, Ltd.*, 632 F.Supp. 244, 249 [S.D.N.Y.1986] ["despite Fed.R.Civ.P. 9(b)'s caveat that '[m]alice, intent, knowledge, and other condition[s] of mind of a person may be averred generally,' courts still have required plaintiffs to provide some factual basis for conclusory allegations as to state of mind"]).

The plaintiffs have also failed to allege that the advice provided to the plaintiffs was "in connection with the purchase or sale of a security" within the meaning of section 10(b) and Rule 10b–5. The complaint fails to state the precise nature of the investments made by the plaintiffs. Specifically, it is virtually impossible to discern from the face of the complaint whether a "security" has been purchased or sold (*see Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 [1990]), whether Weisz is alleged to be a "primary" or "secondary" wrongdoer (*see IIT, An Int'l Investment Trust v. Cornfeld*, 619

F.2d 909 [2d Cir.1980]), or even whether the plaintiffs have standing to maintain this action (see *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 [1975]).

■ Although not alleged in the complaint, on this motion the plaintiffs claim that Weisz "aided and abetted" the promoters of the investments. Such a claim, however, requires allegations of, *inter alia*, the existence of a securities law violation by the "primary" wrongdoer, knowledge of the violation by the person sought to be charged and that the person sought to be charged substantially assisted in the primary wrongdoing (see *Armstrong v. McAlpin*, 699 F.2d 79, 91 [2d Cir.1983], citing *IIT, An Int'l Investment Trust v. Cornfeld, supra*, 619 F.2d at p. 922; *Zupnick v. Thompson Parking Partners, supra*, Fed. Sec.L.Rep. (CCH) ¶ 95,388, at p. 96,912 n. 9). None of these allegations have been pled here.

In sum, this Court finds that the plaintiffs have failed to state a claim for which relief may be granted under either section 10(b) or Rule 10b–5, and therefore the defendant is entitled to judgment on the pleadings dismissing count I of the complaint.

#### (c) *Count II: Common-law Fraud.*

The Court has granted the defendant's motion for judgment on the pleadings on count I for failure to particularize the allegations of fraud under Fed.R.Civ.P. 9(b) and the same considerations and result apply to count II as well. Accordingly, the defendant's motion for judgment on the pleadings as to count II is also granted.

#### (d) *Count III: New York General Business Law Violation.*

Count III of the Complaint alleges violation of New York's General Business Law, Art. 23–A, § 352–c ("the Martin Act"). Part of the relief that the plaintiffs seek on their motion to amend, however, includes a request for leave to withdraw count III.

Since the plaintiffs have acknowledged that no private right of action exists under the Martin Act (see *CPC Int'l Inc. v.*

*McKesson Corp.*, 70 N.Y.2d 268, 276, 514 N.E.2d 116, 118, 519 N.Y.S.2d 804, 807 [1987]; *Frybergh v. Weissman*, 145 A.D.2d 531, 536 N.Y.S.2d 465 [2d Dep't 1988]), and there being no opposition from the defendant, the plaintiffs' motion to withdraw count III is granted, as is the defendant's motion to dismiss this count.

Accordingly, count III of the complaint is dismissed, with prejudice.

#### (e) *Count IV: Negligence.*

Count IV of the complaint alleges a cause of action based on professional malpractice, stating in its entirety, the following:

#### "COUNT IV

25. The defendant was negligent in failing to take those steps necessary to compromise the disallowed tax deductions taken by the plaintiffs on their tax returns predicated on disallowance of the aforesaid Tax Shelters. Such negligence consisted in his failure to take appropriate steps within the time permitted to do so after having advised the plaintiffs who relied thereon that he was in the process of taking the appropriate steps.

26. Plaintiffs suffered damages on this count in the sum of approximately $60,000.00."

■ Under New York law, the statute of limitations for a claim of professional malpractice against an accountant or accounting firm is three years (CPLR 214[6]; *Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 72 F.R.D. 556, 562 [S.D.N.Y.1976] [construing New York law]). For purposes of accrual, the time limitation begins to run at the time of the wrongful acts or omissions (see *Stevens v. Equidyne Extractive Indus. 1980*, 694 F.Supp. 1057, 1068 [S.D.N.Y.1988]). Although generally the statute begins to accrue at the time the malpractice occurs, the statute may be tolled, as in medical malpractice actions, when there is a "continuous relationship" between the accountant and client (*Hall & Co. v. Steiner & Mondore*, 147 A.D.2d 225, 543 N.Y.S.2d 190 [3d

Dep't 1989]). That is, the running of the statute of limitations is prolonged until the accountant ceases rendering professional services to the plaintiff (*see Hall & Co. v. Steiner and Mondore, supra; see also Wilkin v. Dana R. Pickup & Co.*, 74 Misc.2d 1025, 347 N.Y.S.2d 122 [Sup.Ct. Allegany County 1973]).

In applying CPLR 214(6), the Court is mindful that under certain circumstances, a six-year statute of limitations applies in malpractice actions which are essentially based upon breach of contract (*see, e.g., Axel Johnson, Inc. v. Arthur Andersen & Co.*, 738 F.Supp. 772, 775 [S.D.N.Y.1990]). However, where, as in this case, the existence of a contract or agreement is neither alleged in the complaint nor in the affidavits, the six-year statute is inapplicable and the three-year limitation period applies (*see Wilkin v. Dana R. Pickup & Co., supra*).

■ This action was commenced by the plaintiff on March 26, 1987. Thus, the Court must determine whether this action accrued prior to March 26, 1984. If so, this claim is time barred.

Since the defendant moved pursuant to Fed.R.Civ.P. 56 on this ground, the standard governing summary judgment applies, and not the standard on a motion for judgment on the pleadings. That is, summary judgment may only be granted if it is demonstrated that there are no genuine issues of material fact for trial (*see* Fed.R.Civ.P. 56[c]; *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571–573 [2d Cir.1991]). "[T]he judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 [1986]). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir. 1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-

movant bears the burden to come forward with specific facts showing that a genuine issue for trial exists (*see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989]). However, "[m]ere conclusory allegations or denials will not avail a party resisting summary judgment" (*Cassells v. University Hosp. at Stony Brook*, 740 F.Supp. 143, 146 [E.D.N.Y.1990]).

According to Weisz, he was formally discharged by the plaintiffs in February 1982 (Weisz Aff't, dated June 8, 1990, at ¶¶ 13, 16; Weisz Aff't, dated September 10, 1990, at ¶ 9). Although formally discharged at that time, Weisz concedes that subsequently he was consulted by the plaintiffs and/or the plaintiffs' new accountants and responded to various inquiries from time-to-time.

The plaintiffs apparently do not dispute that Weisz was discharged in February 1982. The plaintiffs rely, however, on the conclusions stated in the Complaint that they advised Weisz of the disallowance by the IRS sometime in 1984.

At the outset, the Court notes that the evidence submitted in support of the defendant's motion demonstrates that the plaintiffs did in fact retain another accounting firm, Lazar Levine & Co. in early 1982 (*see, e.g.*, Weisz Aff't, dated September 10, 1990, Ex. "B" [applications filed by the plaintiffs seeking extensions to file late tax returns dated April 14, 1982, were prepared by Lazar Levine & Co.]).

Even assuming that Weisz continued the professional relationship after the alleged termination in February 1982, in no event did this relationship continue to March 26, 1984. Specifically, the Court notes the admission in the Complaint which states that Weisz continuously "performed accounting services for the plaintiffs through 1983" (Complaint ¶ 6). Further, in opposition to this motion, plaintiff Samuel Shochat submitted an affidavit unequivocally admitting that "[f]rom 1977 *until some time late in 1983*" Weisz was our accountant" (Shochat Aff't ¶ 5 [emphasis supplied]).

In sum, no evidence whatsoever was offered by the plaintiffs to suggest that the relationship lasted beyond the calendar

year 1983, other than the conclusory statements contained in the complaint that the defendant was advised of the IRS disallowance sometime in 1984. This is insufficient to create a genuine issue of material fact, especially since the plaintiffs' own Complaint and affidavits indicate otherwise.

Accordingly, based upon the foregoing, the plaintiffs' claim of professional accounting malpractice based on the alleged negligence of the defendant is time barred as a matter of law under CPLR 214(6) and count IV is dismissed.

## 2. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT:

Because of the disposition set forth above, the Court need not make a determination on the defendant's motion for summary judgment, since the Court finds that as a matter of pleading, the plaintiffs have failed to state a claim for relief under either the federal securities laws or the common law of New York. Therefore, the defendant's motion for summary judgment is denied, except as to count IV, which the Court grants.

## 3. PLAINTIFFS' MOTION TO AMEND:

■ The plaintiffs move pursuant to Fed.R.Civ.P. 15(a), for leave to amend the complaint to withdraw count III of the complaint and also to increase the amount alleged in the *ad damnum* clause.

Pursuant to Fed.R.Civ.P. 15(a), "leave *shall* be freely given when justice so requires" (emphasis supplied). Only " 'undue delay, bad faith, futility of amendment, and perhaps, most important, the resulting prejudice to the opposing party' " should provide reason for denial of such a motion (*Richardson Greenshields Sec., Inc. v. Mui–Hin Lau*, 825 F.2d 647, 653 n. 6 [2d Cir.1987], *quoting State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 [2d Cir.1981]; *see also State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409 [2d Cir.1990], *quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 [1962]). However, where there is simply "no merit in the proposed amendments,

leave to amend should be denied" (*Health–Chem Corp. v. Baker*, 915 F.2d 805 [2d Cir.1990]). Of course, "refusal to grant leave must be based on a valid ground" (*Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 [2d Cir.1990], *citing Foman v. Davis, supra*).

■ In determining whether a proposed amendment is frivolous on its face, the Court applies the same test that is used to assess the legal sufficiency of a pleading under Fed.R.Civ.P. 12(b)(6) (*see* 3 *Moore's Federal Practice* ¶ 15.08[4], at pp. 15–80 to 15–82 [2d ed. 1990]), by assuming the truth of the allegations contained in the pleading.

As stated above, the plaintiffs' motion for leave to withdraw count III alleging violation of the Martin Act, is granted.

As to the request for leave to amend the complaint to increase the amount of the *ad damnum* clause, "[s]uch amendments are to be liberally permitted unless there is prejudice to a party" (*Greenspon v. Supermarkets General Corp.*, 744 F.Supp. 77, 78 [S.D.N.Y.1990] [citations omitted]; *cf. Crown Coat Front Co. v. United States*, 395 F.2d 160, 164 [2d Cir.] [upholding district court's denial of leave to amend to increase amount of damages], *cert. denied*, 393 U.S. 853, 89 S.Ct. 123, 21 L.Ed.2d 122 [1968]). Not having demonstrated any possible prejudice, the plaintiff's motion for leave to increase the amount alleged in the *ad damnum* clause is granted.

## IV. CONCLUSION

Based upon the foregoing, the motion of the defendant for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) as to counts I and II, is granted, with leave to replead (*see Ronzani v. Sanofi S.A., supra*, 899 F.2d at p. 198 [2d Cir.1990] [quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 [2d ed. 1989] ["[w]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint' ... [and] refusal to grant leave must be based on a valid ground"]). The motion of the defendant for summary judgment on counts III and IV, is granted. Accordingly, counts III

and IV are dismissed as a matter of law, with prejudice.

The plaintiffs' cross-motion to amend the complaint pursuant to Fed.R.Civ.P. 15(a) to withdraw count III and to increase the *ad damnum* clause, is granted in its entirety. The plaintiffs are granted leave to amend the complaint consistent with this opinion by repleading counts I and II, and shall serve and file the amended complaint within thirty (30) days.

SO ORDERED.