Khalid F. AHMED, et al., Plaintiffs,

v.

Barry H. TRUPIN, et al., Defendants.

No. 89 Civ. 7645 (RWS).

United States District Court,
S.D. New York.

Jan. 5, 1993.

O'Donnell, Fox & Gartner, P.C., New York City, for plaintiffs; William G. O'Donnell, of counsel.

McDonough Marcus Cohn & Tretter, P.C., New York City, for defendant Stuart Becker & Co.; Diane K. Kanca, Eugene H. Goldberg, of counsel.

Eisenberg Honig Fogler & Davis, New York City, for defendant Eisenberg Honig & Fogler; Steven C. Bagwin, of counsel.

## OPINION

SWEET, District Judge.

Defendant Stuart Becker & Co., P.C. (the "Becker Defendants") has moved to dismiss the plaintiffs' Second Amended Complaint for failure to plead fraud with particularity pursuant to Federal Rules of Civil Procedure, Rule 9(b) and for failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6). Defendant Eisenberg, Honig & Fogler ("Eisenberg Honig") has also moved to dismiss on the same grounds and adds claims for dismissal under Federal Rules of Civil Procedure, Rules 56 and 12(b)(1), and a claim for sanctions under Federal Rules of Civil Procedure, Rule 11. For the following reasons, the motions to dismiss are granted. Eisenberg Honig's motion for summary judgment and sanctions pursuant to Federal Rules of Civil Procedure, Rules 56 and 11, are denied.

## THE PARTIES

The underlying disputes and principal parties that are the subject of this and related actions are recounted in the prior opinions of this Court, familiarity with

which is presumed. *See, e.g., Morin v. Trupin,* 799 F.Supp. 342 (S.D.N.Y.1992) (decided July 28, 1992); *Ahmed v. Trupin,* 781 F.Supp. 1017 (S.D.N.Y.1992) (decided January 9, 1992; *Morin v. Trupin,* 778 F.Supp. 711 (S.D.N.Y.1991) (decided November 18, 1991); *Morin v. Trupin,* 747 F.Supp. 1051 (S.D.N.Y.1990) (decided September 29, 1990); *Morin v. Trupin,* 738 F.Supp. 98 (S.D.N.Y.1990) (decided May 3, 1990). In this particular case, there are 123 plaintiffs. One, the Sarasota Plaza Defense Fund, Inc., is a not-for-profit corporation organized under the laws of Florida; the rest are individual investors in the limited partnerships (which offered assorted interests in commercial real estate, the "Sarasota Property," located in Sarasota, Florida) that are the subject of these actions.

Barry Trupin ("Trupin"), together with other corporations (the "Rothschild Group") and individuals associated with him, is alleged to have induced the plaintiffs into investing in these partnerships by misrepresenting the soundness of the investment properties and to have syndicated the interests as part of a fraudulent conspiracy designed to obtain funds from the investing public.

Stuart Becker & Co. (the "Becker Defendants" or "Becker") is an accounting firm and New York professional corporation retained to provide financial forecasts for and to conduct audits of the Sarasota Plaza Associates.

Eisenberg Honig is a law firm and New York professional corporation retained to prepare the Sarasota Plaza Associated private placement memorandum, a tax opinion, and an opinion on the legality of the limited partnership units.

## PRIOR PROCEEDINGS

The Ahmed complaint was filed on November 16, 1989. The plaintiffs voluntarily withdrew with leave to replead their complaint after the court dismissed the complaint in the related underlying action of *Morin v. Trupin,* 747 F.Supp. 1051 (S.D.N.Y.1990) on September 29, 1990. The Amended Complaint was filed on April 4, 1991. Defendants Becker's and Eisenberg Honig's motion to dismiss the *Ahmed* plaintiffs' Amended Complaint was granted by this Court on January 9, 1992 (*Ahmed v. Trupin,* 781 F.Supp. 1017 (S.D.N.Y.1992), with leave to replead. The *Ahmed* plaintiffs then served their Second Amended Complaint on March 10, 1992. The Becker Defendants moved to dismiss the plaintiffs' claims against them on May 29th, 1992 and Eisenberg Honig moved to dismiss the claims against them on June 3rd, 1992.

## BACKGROUND

The Ahmed plaintiffs, like the plaintiffs in the related actions of *Morin v. Trupin* and *Alberti v. Trupin,* are investors in limited partnership interests in the Sarasota properties, commercial real estate run by one of the companies in Trupin's Rothschild Group. The Second Amended Complaint, like its predecessors, alleges that Trupin falsely inflated the values of the Sarasota Properties by selling them between companies controlled by him but ostensibly independent, with a mark-up in price with each sale. It also alleges that Trupin and his companies had a history of offering tax shelters whose tax deductions were disallowed by the I.R.S., that the tax benefits being offered to sweeten the Sarasota deal were equally likely to be disallowed by the I.R.S., and that the accountants, the Becker defendants, and the law firm Eisenberg Honig knew or recklessly refused to learn that this material information was being omitted from the documents offering the limited partnerships. The Second Amended Complaint (hereinafter "Complaint") makes the same allegations as the first two complaints filed by Plaintiffs against the professionals: that both the Becker defendants and Eisenberg Honig knowingly helped to prepare misleading partnership offering materials in connection with the limited partnerships.

Plaintiffs have alleged securities fraud violations under Section 10(b) of the 1934 Securities and Exchange Act (15 U.S.C. § 78j) on the part of all defendants, aiding and abetting the securities law violations and professional negligence on the part of

the Becker defendants and Eisenberg Honig, a pattern of racketeering activity under RICO with the securities violations as the predicate acts, and a variety of state law claims, including civil theft and breach of fiduciary duty, on the part of the Rothschild Group.

## DISCUSSION

### The Applicable Limitations Periods

Defendants maintain that the securities claims of the plaintiffs who reside and who purchased their interests in the Third, Seventh, and Second Circuits are time-barred. Plaintiffs maintain that the claims of none of the plaintiffs are barred, based on allegations that all plaintiffs have standing to allege the state-law claims and that defendants' behavior has tolled the statute of limitations.

### 1. Statute of Limitations for Professional Negligence

This Court analyzed the statute of limitations applicable to the actions here in a previous opinion (*Ahmed v. Trupin*, 781 F.Supp. 1017 (S.D.N.Y.1992)) and concluded that the actions of those plaintiffs who resided in the Third Circuit were barred. However, the Second Amended Complaint still includes the claims of all plaintiffs, including those who reside in the Third Circuit, and offers this rationale in Plaintiff's Memorandum of Law:

> All of the plaintiffs' claims for professional negligence against Eisenberg Honig and Becker have been timely commenced ... [Under New York law] the Court of Appeals has held that the six-year statute of limitations governs a malpractice action for damages to property or pecuniary interests.... Here, it is undisputed that Eisenberg Honig were the attorneys for the Sarasota limited partnership. Implicit in that relationship was an obligation to exercise due care in the preparation of the [Private Placement Memoranda].... Moreover.... where (as here) an accountant continues its professional relationship with the client, the running of the statute will be prolonged, or tolled, until the accountant ceases rendering professional services to the client.

Professional negligence requires a professional duty. Since the investors were not in privity nor in a relationship close enough to substitute for privity with the Becker Defendants or Eisenberg Honig, they do not have standing to bring a claim of professional negligence. Further, even if the plaintiffs' claims otherwise survived, the statute would not be tolled here because the plaintiffs relied upon the misrepresentations only at the time they purchased their interests in the partnerships; misrepresentations thereafter, whether part of a continuing relationship or not, could not have damaged the plaintiffs. Since the parties seem to agree that the New York law applies, the Court will analyze the claims in light of New York law.

### a. Accountants' Liability

■■■ Plaintiffs' state-law claims for professional negligence and breach of fiduciary duty fail because, under New York law, the professional defendants owed the plaintiffs no fiduciary duty and therefore cannot be liable to them for negligence. A limited exception to this (the "Credit Alliance Test", from its exposition in *Credit Alliance v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985)) applies to accountants, but Plaintiffs' claims do not come within this exception according to the facts as alleged by the Plaintiffs.

■■ Judge Cardozo held that an accounting firm owes a duty of due care only to those in privity of contract with it or to those whose use of its services was known to all parties as the sole "end and aim of the transaction," *Ultramares Corp. v. Touche*, 255 N.Y. 170, 183, 174 N.E. 441, 446 (1931). In *Ultramares*, the accounting firm had prepared 32 copies, each certified as "original" of a balance sheet for a client which the accounting firm knew the client would exhibit to third parties as a basis for financial dealings. Cardozo concluded that "a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose ac-

countants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Id.* at 179, 174 N.E. at 444. This requirement of privity with the accountants has been relaxed only for a limited exception in favor of a fixed, defined group:

> [T]he accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. This was within the contemplation of the parties to the accounting retainer. In such circumstances, assumption of the task of auditing and preparing the returns was the assumption of a duty to audit and prepare carefully for the benefit of those in a fixed, definable and contemplated group whose conduct was to be governed, since, given the contract and the relations, the duty is imposed by law and it is not necessary to state the duty in terms of contract or privity.

*White v. Guarente,* 43 N.Y.2d 356, 361–2, 401 N.Y.S.2d 474, 478, 372 N.E.2d 315, 319 (1977) (citations omitted). Potential purchasers are not such a group.

The New York Court of Appeals held that *White* affirmed *Ultramares* in *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985). The Court then restated the *Ultramares* rule as follows (the "Credit Alliance test"):

> Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used to a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountant's understanding of that party or parties' reliance.

65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118.

■ Since the Becker defendants were retained to supply the financial forecasts included in the Offering Materials, Plaintiffs allege these defendants knew of the particular purposes for which the documents would be used. An unidentified buyer may still be a known party for the purposes of the Credit Alliance test, although it should be noted that Plaintiffs have not alleged they were known parties. *See Vereins–Und Westbank, A.G. v. Carter,* 691 F.Supp. 704, 710 (S.D.N.Y.1988) (unnamed assignee satisfies second prong of the Credit Alliance test). However, Plaintiffs completely fail to allege any nexus between them and the Becker Defendants (the third prong of the test) from which the accountants' understanding of Plaintiffs' reliance could be inferred. They allege no actions on the part of defendants which invited reliance beyond the mere fact that accounting figures, once written down, may be read by anyone. This, of course, was precisely why the privity exception in *Ultramares* was limited to cases of direct, known reliance. *See Vereins–Und,* 691 F.Supp. at 704. "[P]ublic accountants are public only in the sense that their services are offered to any open who chooses to employ them. This is far from saying that those who do not employ them are in the same position as those who do." *Ultramares,* 255 N.Y. at 187, 174 N.E. at 448.

### b. Attorneys' Liability

■ In a motion to dismiss, the court may consider the offering prospectus itself, even if the prospectus was not attached to the complaint and made a part thereof under Federal Rule of Civil Procedure, Rule 10(c). *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied sub. nom. Cortec Indus., Inc. v. Westinghouse Credit Corp.,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991). Plaintiffs' claims and Defendants' motions to dismiss focus on the parts of the offering prospectus prepared by Eisenberg Honig—the tax opinion let-

ter. The essence of Plaintiffs' claims against the law firm is that the assumptions on which the opinion letter was founded were known to be false by the defendants at that time.

The tax opinion letter offered by Eisenberg Honig, while part of the offering materials, is addressed to Sarasota Plaza Associates and concerns the tax status of the partnership in addition to the tax benefits to potential investors. It was prepared by Eisenberg Honig for the partnership itself. Plaintiffs do not allege they themselves ever dealt directly with Eisenberg Honig; instead, they generally allege that the professional defendants "were engaged in a position of trust and confidence and in their respective capacities rendered legal, accounting, financial, investment and tax advice which was used in the private placement memoranda and relied upon by investors in the Investor Partnerships, including plaintiffs." Complaint at ¶ 100.

■ The law is settled in New York that an attorney may not ordinarily be held liable in negligence toward third parties with whom he is not in a relationship of privity. *Crossland Sav. FSB v. Rockwood Ins. Co.,* 700 F.Supp. 1274, 1280 (S.D.N.Y. 1988). This does not mean that an attorney-client relationship requires a strict contractual agreement, but that a lawyer may be estopped from denying the relationship only if the lawyer represents that she is acting for the third party's benefit. *Id.* at 1281. A lawyer employed or retained by a corporation or similar entity owes his allegiance to that entity, not to every person connected with that entity. *Quintel Corp. N.V. v. Citibank, N.A.,* 589 F.Supp. 1235, 1240 (S.D.N.Y.1984).

■ It is true that "it is not necessary that [the] ... plaintiff plead a contractual theory of liability or that there be an express agreement between the parties for the professional to use due care in the performance of services," *Cohen v. Goodfriend,* 665 F.Supp. 152, 159 (E.D.N.Y. 1987). However, in *Cohen,* the lawyer represented all of the parties in the transaction and dealt directly with the plaintiff in closing his purchase of a partnership inter-

est in a restaurant owned by the other two partners. "Schwartz, as an attorney, may nonetheless owe a fiduciary duty to a person, such as plaintiff, with whom he deals. ...." *Cohen, supra* at 158.

■ Plaintiffs do not allege any such direct dealing with Eisenberg Honig. The opinion letter was addressed to the partnership, not to any potential or actual limited partners. "When a lawyer at the direction of her client prepares an opinion letter which is addressed to the third party or which expressly invites the third party's reliance, she engages in a form of limited representation." *Crossland,* 700 F.Supp. at 1282. Under such circumstances these "opinion letters do not constitute advice to a client, but rather were written at the client's express request for use by third parties." *Vereins–Und,* 691 F.Supp. at 714. The fact that the document evidently will be used by third parties does not make them clients of the law firm. Plaintiffs need not allege a true contractual relationship, but they do need to allege some form of nexus with Eisenberg Honig in order to recover.

■ The only remaining issue is whether Credit Alliance's limited exception to privity for accountants extends to lawyers. "No language in any New York Court of Appeals opinion suggests that lawyers should be excluded from the doctrine's reach, nor does there appear to be any principles reason for such exclusion." *Vereins–Und,* 691 F.Supp. at 716; *accord, Grenoble Mills, Inc. v. Drinker, Biddle & Reath,* 84 Civ. 3514, slip. op., 1986 WL 8697 (1986 S.D.N.Y.). The test has been extended to other actions seeking damages for negligent misrepresentation against noncontractual parties (*Ossining Union Free School Dist. v. Anderson,* 73 N.Y.2d 417, 541 N.Y.S.2d 335, 338, 539 N.E.2d 91, 94 (1989) (engineers liable due to direct dealing despite absence of contractual privity); *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 859 F.2d 242, 248 (2d Cir.1988) (contractor's actions dismissed against manufacturer of prefabricated construction materials); *cf. Widett v. U.S. Fidelity and Guar. Co.,* 815 F.2d 885, 887 (2d Cir.1987) (architects not

liable under the limited exception to privity created by *Credit Alliance* )). But even under the Credit Alliance test, Plaintiffs' claims against Eisenberg Honig fail for the same reasons that the fail against the Becker defendants: Plaintiffs have indicated no behavior on the part of Eisenberg Honig which demonstrates the law firm's awareness of their reliance.

For this reason, the statute of limitations cannot be tolled based on a "continuous relationship" rule. Since the plaintiffs do not allege a contractual relationship with either the accountants or the lawyers, there is no professional relationship to continue. Although these defendants may have had a "continuous relationship" with the Rothschild Group (*see Shochat v. Weisz*, 757 F.Supp. 189 (E.D.N.Y.1991)), it could have none with the plaintiffs. The fraud was complete at the time of purchase, and any post-purchase activities cannot establish liability under § 10(b). *Huang v. Sentinel Government Securities*, 709 F.Supp. 1290, 1295–96 (S.D.N.Y. 1989); *Griffin v. McNiff*, 744 F.Supp. 1237, 1252 (S.D.N.Y.1990). The mere recurrence of professional services would not constitute continuous representation sufficient to toll the statute where, as here, the later services were not related to the original services. *Hall & Co. v. Steiner and Mondore*, 147 A.D.2d 225, 228, 543 N.Y.S.2d 190 (3rd Dept.1989).

### 2. *Statutes of Limitations for 10(b) Fraud*

Defendants correctly state that the claims of the Third and Seventh Circuit plaintiffs cannot be maintained. The Third Circuit decided *In re Data Access Sys. Secs. Litig.*, 843 F.2d 1537 (3rd Cir.1988) on April 8, 1988, in an opinion which adopted a uniform statute of limitations for § 10(b) claims of "one year after the plaintiff discovers the facts constituting the violations, and in no event more than three years after such violation." *Id.* at 1550. Since this period is shorter than New York's two-year/six-year period statute of limitations for fraud, under New York's borrowing statute (N.Y.Civ.Prac. L. & R. § 202 (McKinney 1990)) the shorter period of limi-

tations applies to Plaintiffs who reside in Pennsylvania, New Jersey, and Delaware. The Pennsylvania plaintiffs are: Alan Brooks, Lawrence Caprous, Ronald Childs, Richard Feher, Roger Laible, John Miller, Todd Vallin, and Michael P. Whelan. The New Jersey plaintiffs are: Deborah Du, Kenneth Marks, Joseph J. Massimino, and Jerry Souslain. One plaintiff resides in Delaware: W. Albert Forwood. *See Ahmed v. Trupin*, 781 F.Supp. 1017, 1022 (S.D.N.Y.1992).

While the statute of limitations in the Seventh Circuit may still pose "a significantly more difficult question than any other circuit," *Morin*, 799 F.Supp. at 350, the recent decision of *McCool v. Strata Oil Company*, 972 F.2d 1452 (7th Cir.1992) has helped to clarify the situation of the Illinois and Wisconsin plaintiffs considerably. In *McCool*, the court found that Section 27A's effect on the retroactivity of the new three year/one year statute of limitations was governed by *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1389 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). *Short*, in turn, has left the question of retroactivity of new periods of limitations open, calling it "a question of some subtlety." *Id.* at 1389–90. The Seventh Circuit then declined to revisit the issue in *Pommer v. Medtest Corp.*, 961 F.2d 620, 627–28 (7th Cir.1992). In *McCool*, however, the court finally stated: "And with the assistance of a recent Second Circuit decision, *Henley v. Slone*, 961 F.2d 23 (2d Cir.1992), not available to the panel in *Pommer*, we find that we can decide the question." *McCool*, 972 F.2d at 1458.

In *Henley*, the Second Circuit held that the retroactivity rule of Section 27A did not always operate to give securities fraud plaintiffs the benefit of the (usually longer) state statute of limitations. *Henley*, 961 F.2d at 25. *Henley* applied the retroactivity analysis in *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.1991), *vacated sub nom. Northwest Savings Bank v. Welch*, —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048, which in turn applied the case-specific three-pronged test in *Chevron Oil Co. v.*

**1108**

*Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Under *Chevron*, prospective application of a new rule is required where:

> (1) the decision at issue overrules clear precedent on which litigants may have relied or addresses an issue of first impression which was not foreshadowed; (2) retroactive application of the decision would retard the operation of a federal statute; and (3) retroactive application would result in substantial inequity.

*McCool*, 972 F.2d at 1459 (citations omitted). Applying these factors to the case before it, the Seventh Circuit held that state law applied if the plaintiff could demonstrate reliance on the old limitations period.

█ Plaintiffs do not allege precisely when they purchased their interests, although they allege the Offering Materials were dated 1984 and that interests were sold until 1986. The original complaint was filed November 16, 1989. Presumably, then, plaintiffs' claims are time-barred under the three-year repose limit unless they can demonstrate they delayed filing suit in reliance upon the longer statute of limitations. *McCool*, 972 F.2d at 1459; *In re VMS Limited Partnership Securities Litigation*, 803 F.Supp. 179 (E.D.Ill.1992). In *VMS*, the court found that plaintiffs had conceded reliance by implication when they argued that they did not discover the fraud until after the requisite three years had passed, and therefore did not delay filing because they felt they had until the state statute of limitations had run before they needed to complete their investigation of the fraud. Since Plaintiffs have not alleged any such reliance, and in fact have offered no opposition to these arguments, the thirty-three Illinois plaintiffs' claims are time-barred. They are: Khalid Ahmed, William Baker, Evelyn Brumwell, George Burrows, Cornelius Callahan, Gordon Carson, Milorad Cupic, Carey Dachman, Walter Doris, James Ellis, Richard Felt, Milton Glickstein, Ayo Gomith, George Harney, Nanda Khedkar, Pu Woong Kim, Augustus Lariosa, Lawrence Levin, Jerry Litner, R.A. Malik, James Marshall, Karl Muster, Robert Peshek, Robert Placko, Warner Ri-

ley, John Schmidt, Arthur Segil, Parvez Shirazl, Ivo Smolic, Arnet Sorters, Jon Truaz, Alvin Zimmerman, Nick Zografos. There is one Wisconsin plaintiff, Seymour Kroll, whose claims are barred by the analogous state statute of limitations found in Wisc.Stat. § 551.59(5) (1990). The statute provides that "[n]o action shall be maintained under this section [the Wisconsin Blue Sky laws] unless commenced before the expiration of 3 years after the act or transaction constituting the violation." *Id.*

█ Two Plaintiffs reside in Connecticut, Douglas Brown and Alfred Sgambati. Their claims must be dismissed if they file more than two years after the time at which they should have discovered the fraud under the statute of limitations borrowed from Conn.Gen.Stat. 36–498(f); *see Halbrecht v. CSH Stamford Hotel Ltd. Partnership*, No. H–90–799 slip. op., 1992 WL 336757 (D.Conn.1992). The plaintiffs here, who filed their complaint in November 1989, allege they could not discover the fraud until January 1989. Since the defendants do not oppose this, the Connecticut plaintiffs' claims are not dismissed as time-barred.

Therefore, since the securities fraud claims of the plaintiffs found to be time-barred in *Ahmed v. Trupin*, 781 F.Supp. 1017 (S.D.N.Y.1992) are still time-barred in addition to the claims of the Seventh Circuit plaintiffs, and since the plaintiffs do not have standing to maintain any breach of fiduciary duty or professional negligence claims, all of the claims of the plaintiffs as listed above are dismissed with prejudice.

### Rule 9(b)

█ Both the primary and the aiding and abetting counts of securities fraud must first meet both the pleading requirements of 9(b) and the applicable statute of limitations before the court may find fraud or racketeering activity. While Court has stated the requirements of Federal Rules of Civil Procedure, Rule 9(b). in its previous opinion, a certain amount of repetition is appropriate.

█ Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind may be averred generally." The pleadings must present a factual basis giving rise to a strong inference of fraudulent intent. *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991).

█ The Complaint still does little more than allege that the professional defendants were retained for their services for this and for other limited partnerships offered by the Rothschild Group. *See Ahmed v. Trupin*, 781 F.Supp. at 1026. To state a claim for 10(b), the plaintiffs must allege the usual elements of scienter, causation, and damages. A pleading of scienter is relaxed against an insider: "The specific requirements regarding exactly what statements were made, and when, where and by whom are 'somewhat relaxed' when the complaint is based on an offering memorandum." *Stevens v. Equidyne Extractive Indus. 1980*, 694 F.Supp. 1057, 1061 (S.D.N.Y.1988). Plaintiffs now allege both Eisenberg Honig and the Becker defendants to be insiders. Complaint at ¶¶ 54, 64–65, 72–76. The plaintiffs allege the offering materials themselves to supply the time, place, and manner of the loss. However, "[a]s to any defendant to whom cannot fairly be ascribed insider or affiliate status, a more precise connection to, or role in preparation of, the memorandum must be pleaded to sustain a claim against Rule 9(b) challenge." *Morin*, 747 F.Supp. at 1061, *citing Thornock v. Kinderhill Corp.*, 712 F.Supp. 1123, 1128 (S.D.N.Y.1989). The precise connection here seems to be in the allegation that Eisenberg Honig prepared fraudulent tax opinion letters and the Becker defendants prepared fraudulent projections. Therefore, this Court will consider only allegations relating to these parts of the Offering Materials to determine which among Plaintiffs' allegations have met the requirements of Rule 9(b).

█ Loss and transaction causation, however, still must be alleged even against an insider; therefore, the plaintiffs must not only show that they would not have invested if they had learned of the missing information (transaction causation) but that the defendants' fraud actually caused their loss (loss causation).

### The Securities Fraud Claims Against Eisenberg Honig

Most of the plaintiffs' allegations still fail to meet the requirements of *scienter*. In their Complaint, Plaintiffs allege that Eisenberg Honig knew or should have known of the material omissions. Complaint at ¶ 78. In their Memorandum of Law, Plaintiffs state "[i]t is inconceivable that the defendant law firm was unaware of the true intra-Rothschild transfers of the property." These are the sort of conclusory allegations which caused the previous complaint to be dismissed. However inconceivable it might be, the plaintiffs still have to allege how the law firm came to know the nefarious goings-on on the part of Trupin.

Plaintiffs have also alleged that Eisenberg Honig is an insider by virtue of the fact that it created an intermediary corporation, Westwind Leasing Co., to help syndicate the equipment shelter trusts. Complaint at ¶ 65. This does nothing to prove that Eisenberg Honig knew anything specific about the allegedly fraudulent chain of title in the real estate trusts beyond what the law firm has already admitted knowing. If Plaintiffs could allege some specific instance of scienter in regards to the real estate trusts on the part of Westwind which Plaintiffs could not tie directly to Eisenberg Honig, the creation of Westwind might tie such knowledge to the law firm. However, Plaintiffs have not alleged that Westwind Leasing Co. had anything to do with the allegedly fraudulent real estate opinion letters, or that through Westwind Eisenberg Honig had any specific input into any other allegedly fraudulent documents among the Offering Materials.

But the Complaint does allege one material omission traceable to Eisenberg Honig with sufficient particularity to pass muster under Rule 9(b). The complaint states that Eisenberg Honig failed to reveal the nega-

tive tax audit history despite, upon information and belief, having represented the Rothschild Group before the I.R.S. Complaint at ¶ 68. The basis of the plaintiff's allegations that Eisenberg Honig knew of Trupin's negative tax audit history is an article in New York magazine, dated June 18, 1984, which stated that Eisenberg Honig represented Trupin before the I.R.S. in 14 tax audits. *Id.* at ¶ 63. This information is alleged to be repeated in the deposition testimony of Alan Asher, a defendant in an action in the United States District Court of New Jersey, *Harris v. Eisenberg Honig et al.* Complaint at ¶ 62. The plaintiffs do not state when these tax audits occurred, nor whether Eisenberg Honig was Trupin's counsel at the time.

■■■ If a promotor fails to sell, or his investment vehicles fails to qualify for promised tax benefits in one offering, and the same promoter then offers similar investments without disclosing the failure of his previous attempts, this nondisclosure may amount to a material omission. *Martin v. EVP Second Corp.,* [1991 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,115 (S.D.N.Y.1991). Plaintiffs have alleged that, as tax counsel for Trupin, Eisenberg Honig knew that previous tax shelters had failed to qualify for tax benefits. Plaintiffs have also alleged that Eisenberg Honig knew that these real estate trusts were structured in exactly the same way, and therefore should have known that these tax shelters would also fail to qualify.

The next question is to what extent Eisenberg Honig is responsible for this omission. The law firm maintains that it was not, on the grounds that it was only retained to provide tax advice. While all parties admit that Trupin's equipment trusts failed to qualify as tax shelters, Eisenberg Honig vehemently maintains—and the plaintiffs do not dispute—that its tax advice was correct and these particular real estate tax shelters were not disallowed by the I.R.S.

Because Plaintiffs fail to dispute this, the Complaint still fails to allege loss causation. Given that Eisenberg Honig knew of the failure and knew of its omission, that omission would be material if the I.R.S. treated the real estate partnership interests in the same manner as it treated the equipment trusts, and that this disallowance of tax benefits caused the plaintiffs' financial loss. The plaintiffs do not allege this, and therefore it is unclear how Eisenberg Honig's omission about Trupin's prior tax history has caused the Plaintiffs' loss.

> "[W]hat securities lawyers call 'loss causation' *is* the standard common law fraud rule (on which see Prosser and Keeton on the Law of Torts § 110, at p. 767 (5th Ed.1984)), merely borrowed for use in federal securities fraud cases.... The plaintiffs allege that they invests in the defendants' limited partnerships because of the defendants' misrepresentations, and that their investment was wiped out. But they suggest no reason *why* the investment was wiped out,"

*Bastian v. Petren Resources Corp.,* 892 F.2d 680, 683–84 (7th Cir.) *cert. denied,* 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990), at least, no reason that could be traced to Eisenberg Honig's failure. The plaintiffs merely allege that they have been damaged to the extent of their entire investment in the Investor Partnerships. Complaint at ¶¶ 76, 80, 106.

The charge that Barry Trupin immediately looted the Sarasota partnership, *id.* at ¶¶ 42, 43, successfully alleges loss causation, for it does demonstrate why the plaintiffs lost money, but it fails to allege transaction causation against Eisenberg Honig. Plaintiffs' losses stemming from Trupin's alleged bogus checkbook entries cannot be part of their 10(b) claims against Eisenberg Honig, whose role in the allegedly fraudulent deal ceased once the tax opinion letters for the Offering Materials were done. Therefore, plaintiffs' claims against Eisenberg Honig are dismissed with leave to replead.

### *The Securities Claims Against the Becker Defendants*

■■■ The Complaint still fails to state any facts from which intent or knowledge on the part of the Becker defendants may be inferred. Specifically, the Complaint al-

leges, in language which is almost exactly similar to the first Amended Complaint, that Becker made certain forecasts and representations and that "the defendant Becker knew, or should have known, that each of the aforementioned assumptions was false." Complaint at ¶ 52. *See Ahmed,* 781 F.Supp. at 1025. Although this prior opinion found that the plaintiffs had pleaded the details of the alleged misrepresentations with sufficient particularity (*id.*), both that complaint and the present one have failed to plead any facts which could provide an inference of scienter. Indeed, the only new facts which the current complaint has added consist of details about three other partnerships offered by the Rothschild Group, all structured in the same way at about the same time and audited by the Becker Defendants.

■ While accountants have a duty to investigate the obvious, they have no obligation to seek out fraud. If they do not know the data they audit is fraudulent, and the fraudulent nature of the data given them is not apparent, accountants are not liable if they audit it in accordance with GAAP. *IIT v. Cornfeld,* 619 F.2d 909, 927 (2d Cir.1980). Plaintiffs here have not alleged any failure of the Becker Defendants to conform to GAAP, nor any specific deviation from any identified accounting standards. They merely allege that the Becker Defendants must have known and failed to reveal the fraud in the chain of title and the controlled status of the ostensibly unaffiliated North American corporation in three other partnerships.

The plaintiffs allege that the Becker Defendants knew the Sarasota Property had been purchased at an inflated price because the Becker Defendants had audited three other Trupin partnerships, all identically structured, all featuring North American as an unaffiliated seller, and all therefore fraudulent. The only thing new in their allegations is details of the previous three partnerships, all offered within the year, which serve merely to prove that the Sarasota partnership offering was, indeed, structured in exactly the same way. This still fails to allege how the Becker Defen-

dants knew the data they were auditing was fraudulent.

■ Aside from this, the plaintiffs have not alleged any new facts. Instead of describing how Becker defendants knew this, they state that the Becker Defendants knew or "recklessly" failed to discover the inflated valuations and omitted this material information. Mere participation in prior transactions, absent any pleading of facts from which it could be inferred that any of these transactions were fraudulent, is insufficient under Rule 9(b). *Dannenberg v. Dorison,* 603 F.Supp. 1238, 1241 (S.D.N.Y. 1985). "The gist of the Complaint ... is an alleged failure to investigate.... a purported failure to investigate [does] not rise above the level of negligence, which is legally insufficient." *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 228 (S.D.N.Y.1989) (citations omitted).

The Second Amended Complaint, unlike the Amended Complaint, has alleged the Becker Defendants' aiding and abetting of the underlying securities fraud in a separate count from that charging all the defendants with primary wrongdoing. However, because the plaintiffs have alleged no new facts from which an inference of scienter could be inferred, the aiding and abetting count fails as well.

## CONCLUSION

The claims against Eisenberg Honig are dismissed with leave to replead for the reasons stated above. The claims against the Becker Defendants are dismissed with leave to replead.

The motions of Eisenberg Honig for summary judgment and for sanctions under Rule 11, Fed.R.Civ.P., are denied.

It is so ordered.